COMMONWEALTH *vs.* JOHN B. HAMBLEN & another.

Suffolk.    March 7, 1967. — April 27, 1967.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & REARDON, JJ.

*Larceny. False Pretences. Conspiracy. Practice, Criminal,* New trial.

Evidence in a criminal case, that the defendant participated with the treasurer of a money lending corporation in the making of loans by it to a corporation controlled by the defendant for which the borrower corporation gave notes secured by assignments of fictitious accounts receivable evidenced by false invoices or delivery slips, that the loans were far in excess of the treasurer's authority, which, to the defendant's knowledge, was limited, that the defendant further participated with the treasurer in action designed to lead the directors of the lending corporation and certain interested banks to believe that the purported accounts receivable were valid and "current," that the directors relied on such action and false reports by the treasurer, and that at one point the defendant wanted to discontinue the borrowing, saying to the treasurer that he did not "want to go to jail," warranted convictions of the defendant of larceny from the lending corporation and of conspiring with the treasurer to steal from it.  [442–444]

At a trial where there was evidence that larcenies by false pretences from a corporation by the defendant were accomplished in concert with its treasurer, certain instructions in the judge's charge to the jury sufficiently covered requests by the defendant for rulings in effect that in order to convict the defendant the jury must find that he intended to deceive some person associated with the corporation other than the treasurer.   [444]

There was no abuse of discretion in denial of a motion for a new trial of a criminal case on the ground of failure of the defendant's counsel to file a bill of exceptions within the time allowed therefor where it was not shown that the exceptions saved at the trial merited appellate review and for aught that appeared the defendant and his counsel might have decided not to press the exceptions.   [445–446]

INDICTMENTS found and returned on June 8, 1964.

The cases were tried in the Superior Court before *Forte, J.*

*Arthur Gottlieb* for the defendant Hamblen.

*Earl Auerbach* (*John P. White, Jr.,* with him) for the defendant Leventhal.

*Murray P. Reiser,* Assistant District Attorney, for the Commonwealth.

SPALDING, J.   The defendants were tried jointly on an indictment alleging conspiracy to steal moneys from American Discount Corporation (ADC) from April, 1960, through March, 1963, and on three indictments alleging larceny exceeding $100 from ADC.   The larceny indictments contained ninety-one counts, each involving a separate loan transaction occurring during the period from March, 1960, to November, 1962.[1]   In addition, Leventhal was tried on three indictments alleging violation of G. L. c. 266, § 67 (false entries in corporate books), and two indictments alleging violation of G. L. c. 266, § 74 (fraudulent use of corporate credit).   The jury returned verdicts of guilty on all the indictments.

The cases come here on bills of exceptions of Hamblen and Leventhal.   Hamblen's exceptions relate to the denial of motions for directed verdicts and the denial of certain requests for rulings.   Leventhal's exceptions relate to the denial of his motion for a new trial.

---

[1] A nolle prosequi was subsequently entered as to several of the counts.

## I.

### Hamblen's Exceptions.

1. At the close of the Commonwealth's case Hamblen moved for directed verdicts on each of the indictments against him. These motions were renewed at the close of all the evidence. The motions were denied on each occasion, and exceptions were saved.

We summarize the evidence as follows: Hamblen was the president, treasurer, general manager and, after 1958, the sole stockholder of C. B. Hamblen & Son, Inc. (Hamblen & Son). ADC was a Massachusetts corporation engaged in the business of lending money. Leventhal was the treasurer and general manager of ADC and owned 20% of its stock. His mother also owned 20% of the stock and the remainder was owned by three other stockholders. Leventhal's authority to make loans for ADC was limited by votes of the board of directors; he was not authorized to make unsecured loans over $1,600 or any type of loan over $5,000 in the aggregate to any one individual.

Hamblen & Son, through Hamblen, began borrowing money from ADC in 1956. In the first transaction Leventhal and another director of ADC made an inspection, in the presence of Hamblen, of the assets of Hamblen & Son. Leventhal was instructed to make no further loans to Hamblen & Son without the directors' approval. Thereafter, Hamblen dealt only with Leventhal on all loan transactions. From time to time money was borrowed on purported accounts receivable. In each transaction Hamblen signed a note and an accounts receivable contract; invoices or delivery slips were sometimes attached to the contract. The contracts recited, in part, ". . . [Hamblen & Son] hereby certifies that the said claims or accounts are bona fide, and correct accounts or claims for goods actually sold and delivered . . . ." In some instances, valid accounts receivable were pledged to ADC. In others, however, the alleged accounts were either nonexistent or else related to customers with whom Hamblen had done business in the past or

expected to do business in the future. In a number of instances the attached invoices or delivery slips were either completely false or vastly overstated. Each count of the joint larceny indictments represents a transaction in which Hamblen obtained a loan from ADC by pledging false accounts receivable.[2]

ADC's books were audited twice each year by a certified public accountant. Prior to the audits, Leventhal insisted that Hamblen create new loans, secured by fictitious accounts receivable, the proceeds of which were applied in small amounts against other loans which likewise were secured by fictitious accounts. The purpose of these new loans was "to create the impression for the benefit of the . . . [directors] and the various banks from which ADC borrowed" that the pledged accounts receivable were valid and current. Hamblen's and Leventhal's bookkeepers conferred each year in order that their books reflected what appeared to be proper payments against the falsely secured loans. Each loan was classified and numbered as a separate loan. Leventhal represented to the directors of ADC in monthly reports that these were separate loans to various persons; that "the accounts receivable were in excellent condition"; and that "at least ninety per cent of the accounts receivable were current."

In fact, 70 to 80% of the accounts were six months to a year in arrears. Leventhal and Hamblen both had personal knowledge of the status of these accounts and there was no misrepresentation between them. There was evidence that Leventhal had told Hamblen of his $5,000 per loan limit. Nevertheless, on various days two or three loans were transacted each of which was under that sum. When Hamblen & Son owed ADC $100,000 Hamblen wanted to discontinue the borrowing, saying to Leventhal, "I don't want to go to jail." By the end of 1963 the excess of

---

[2] All the loan proceeds were used for the business purposes of Hamblen & Son. In addition to the loan transactions, Leventhal took on behalf of ADC "a mortgage and security interests on all personal tangible assets" of Hamblen & Son. Leventhal personally, through a straw, obtained a mortgage on the property owned by Hamblen's mother where Hamblen & Son was located.

monies loaned to Hamblen & Son over payments received by ADC had reached $471,000.

During the period in which the loans which are the subject of the indictments were transacted, the directors of ADC did not know that Leventhal, on behalf of ADC, was doing business with Hamblen & Son. They relied upon Leventhal's monthly reports and the limitations upon his authority to make loans, and believed that the large volume of loans made by Leventhal were loans to various persons and were secured by valid and current accounts receivable.

We consider first the denial of directed verdicts relating to the larceny indictments. The Commonwealth's theory was that the defendants obtained moneys from ADC by the use of false pretences in violation of G. L. c. 266, § 30 (as amended by St. 1945, c. 282, § 2). "To constitute the crime of larceny by false pretences 'it must appear that there was a false statement of fact known or believed by the defendant to be false, made with the intent that the person to whom it was made should rely upon its truth, and that such person did rely upon it as true and parted with personal property as a result of such reliance.'" *Commonwealth* v. *Kiernan,* 348 Mass. 29, 46, and cases cited. *Commonwealth* v. *Monahan,* 349 Mass. 139, 150. Hamblen contends that he did not make false statements with the intent that they would be relied upon by ADC, and that no false statements attributable to him were in fact relied upon by ADC in parting with the money loaned. We are of opinion that the larceny indictments were properly submitted to the jury.

The evidence shows that Hamblen knowingly made and participated in the making of false statements. Had he done no more than sign the contracts, it could plausibly be argued that he believed them to be only formalities which he signed with no fraudulent purpose. But in addition to signing the contracts, he substantiated the pledged accounts with false invoices and delivery slips. He collaborated with Leventhal in applying new loans to false accounts in order that the accounts would appear to be current. After the loans had reached the sum of $100,000 "he wanted to

stop," saying, "I don't want to go to jail." This evidence is inconsistent with an honest purpose. It is not important that Hamblen may not have known precisely what use Leventhal might have made of the falsifications or whom they might deceive. He was present when, in connection with the first loan transaction, another director of ADC examined his assets. There was evidence that he knew Leventhal's loaning powers were limited. It could be inferred that he knew he was dealing, through Leventhal, with a corporation. He is presumed to intend the probable consequences of his acts. The jury were entitled to find that Hamblen intended the falsifications to deceive some person or persons, other than Leventhal, associated with ADC.

The directors of ADC relied upon Leventhal's false monthly reports and thus did not discover the existence of the loans to Hamblen & Sons. But the fact that the directors did not rely directly upon Hamblen's statements cannot avail him. It would be a strange rule of law that pronounced that the very success of the scheme in concealing from the directors the loan agreements with Hamblen should operate to shield one of its participants from criminal accountability. When two or more persons jointly participate throughout the various stages of a fraudulent scheme the acts of one may be considered against the others. *Commonwealth* v. *Harley,* 7 Met. 462, 465–466. *Commonwealth* v. *Farmer,* 218 Mass. 507, 513. *Commonwealth* v. *Morrison,* 252 Mass. 116, 123. *Commonwealth* v. *Mycock,* 315 Mass. 262, 266–267. *Commonwealth* v. *Kiernan,* 348 Mass. 29, 48–50. The evidence warrants a finding that Hamblen was an integral participant, with Leventhal, in the scheme of borrowing from ADC. It could be inferred that Leventhal's reports were based upon and substantiated by Hamblen's false statements. The directors' reliance upon Leventhal's reports furnished the necessary element of reliance to support the verdicts against Hamblen.

In view of what has been said above, the question of sufficiency of the evidence to support the conspiracy indictment may be disposed of briefly. The jury could find that Hamblen combined with Leventhal in a concerted effort to

commit larceny by obtaining loans from ADC by false pretenses. See *Commonwealth* v. *Monahan,* 349 Mass. 139, 153–154, and cases therein cited.

2. Hamblen presented numerous requests for instructions, all of which were denied subject to exception. To discuss these exceptions individually would unduly prolong this opinion. Several of them have not been argued and we do not consider them. Rule 13 of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 698. Those that have been argued pertain to requests for rulings which were essentially similar and will be dealt with together. The judge was requested, in effect, to charge that in order to convict Hamblen of larceny the jury must find that he intended to deceive some person, other than Leventhal, associated with ADC. Hamblen contends that the judge failed so to charge.

The concluding sentence of the charge was: "For the crime of obtaining property under false pretenses, there must be false representation made with knowledge of the falsity, made with a specific intent to deceive one who is ignorant of the falsity of the statement and parts with his money as a result." Earlier, the judge had charged: "[Y]ou have a right to infer . . . that he knew that there was a corporation, . . . that he knew that it was the corporation's money that he was using, . . . and that there was someone else involved other [than] Mr. Leventhal himself." We are of opinion that the requested instructions were substantially covered by the charge given. There was thus no error in the denial of the requests. *Commonwealth* v. *Hersey,* 324 Mass. 196, 208.

3. Hamblen has also argued that certain portions of the judge's charge were erroneous. But no exceptions were taken to these portions, and we do not consider them.

## II.

### *Leventhal's Exceptions.*

On November 12, 1965, six months after sentences were imposed, Leventhal moved for a new trial. The basis of

the motion was that, through the mistake or inadvertence of his counsel, he was deprived of his right to have exceptions which were properly saved at his trial reviewed by this court, and that he was thus denied due process of law and substantial justice.[3] The motion was denied. The correctness of this ruling is the sole question presented.

The verdicts of guilty against Leventhal were returned on March 10, 1965. During the trial his counsel saved exceptions to rulings of the trial judge and to portions of the charge to the jury.[4] On March 26, counsel for Leventhal filed a motion to extend the time for filing a bill of exceptions up to and including April 26, 1965. This motion was allowed, but within that period no bill of exceptions was filed and no motion was made to extend the time of filing. No bill of exceptions was ever properly filed.

At the hearing on the motion for a new trial, there was the following evidence: Leventhal's trial counsel, having been allowed one extension of time for filing a bill of exceptions, prepared a motion for another extension. This second motion was shown to the assistant district attorney, who assented to it, but it was never filed. Counsel was aware that the first extension expired on April 26. Leventhal was told he would need another extension if a bill of exceptions was to be filed, but he was not aware of the exact date on which the first extension expired. Prior to the judgments, defence counsel had discussed with both Leventhal and the trial judge a desire to withdraw from the case. On May 1, he signed a letter purporting to withdraw. The judge, however, persuaded him to remain in the case until sentencing.

There was no error.

Leventhal enjoyed the assistance of counsel of his own choosing at all stages of the proceedings. The only aspect of this assistance now complained of is that the time for

---

[3] The counsel whose conduct is the basis of the motion did not argue the case in this court.

[4] The bill of exceptions does not reveal what these rulings were or what portions of the charge were deemed objectionable.

filing a bill of exceptions was allowed to lapse. There is nothing to show that the exceptions saved at the trial merited appellate review. For aught that appears Leventhal and his counsel may have determined not to press the exceptions. We are of opinion that there was no abuse of discretion in the judge's denial of the motion for a new trial. Since it could have been found that the failure on the part of counsel to perfect the exceptions was neither due to his inadvertence or mistake nor was contrary to the desire of his client, we do not reach the contention that Leventhal's constitutional right to the effective assistance of counsel was denied.

*Exceptions overruled.*