COMMONWEALTH *vs.* ALBERT CAMELIO.

Plymouth.    February 12, 1973. — May 15, 1973.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Larceny. False Pretenses. Fraud. Joint Enterprise. Practice, Criminal,* Requests, rulings and instructions. *Error,* Whether error harmful.

At the trial of an indictment for larceny from an insurance company, evidence that the defendant, a doctor, acted in concert with an attorney in fabricating false medical reports of four persons allegedly injured in a spurious automobile accident, that the attorney submitted the reports to the company, that in reliance on the reports the company's claim adjuster settled with the attorney four claims arising out of the spurious accident, and that the defendant deposited checks issued by the attorney which were in payment for bills "for treatment of these patients," warranted conviction of the defendant of larceny by false pretenses. [297-300]

Where it appeared at the trial of an indictment for larceny in excess of $100 from an insurance company by false pretenses that the amounts lost by the company and received by the defendant were not put in issue and that he testified to receiving payments in excess of $100, denial by the judge of the defendant's request for a ruling that the jury must find that the company "paid out some specific amount of money, in excess of one hundred dollars, as a result of its reliance on defendant's false representations" did not raise "a substantial risk of a miscarriage of justice" so as to require reversal of the conviction of the defendant. [300-303]

INDICTMENT found and returned in the Superior Court on March 18, 1970.

The case was tried before *Sgarzi, J.*

*Francis J. DiMento* for the defendant.

*William T. Harrod, III,* Deputy Assistant Attorney General (*David R. Mills,* Assistant Attorney General, with him) for the Commonwealth.

GOODMAN, J.    The defendant, Dr. Albert Camelio, was found guilty by a jury on an indictment charging him and

three others with larceny in excess of $100 from the Lumbermen's Mutual Insurance Company. Dr. Camelio was tried alone,[1] fined $600, given a suspended sentence of one year in the house of correction, and placed on probation for three years. The case is here on the defendant's bill of exceptions.

The defendant's primary attack, made at trial by a motion for directed verdict, is on the sufficiency of the evidence to convict of larceny by false pretenses. The motion was properly denied; we summarize the evidence.

There was testimony by one Albert Fournier, a co-indictee who had pleaded guilty, that in June, 1968, he called an attorney who provided him with the details of a spurious automobile accident — it had never occurred — and told him to go to the office of the defendant. The following day, June 7, 1968, he, together with Dorothy Fournier D'Andrea, and Marie Zboya, both of whom Albert Fournier had told the attorney "to put . . . in the accident", went to the defendant's office. The defendant told Fournier that he had talked on the phone with the attorney who had given him "the information." He and the defendant went over the information — "the run down of the [spurious] accident and the injuries sustained." He had been in no accident and he had received no injuries; he was given no examination, treatment or medication. He further testified that he remembered going over with the attorney the dates of the visits "that he was supposed to be making at the defendant's office."

Dorothy Fournier D'Andrea, also a co-indictee who pleaded guilty, and Marie Zboya each testified that they were not in an accident on June 6, 1968, that they accompanied Albert Fournier to the defendant's office the following day and that they never returned thereafter. Mrs. D'Andrea testified that she was never examined and received no medication from the defendant. Miss Zboya

---

[1] Two of the others charged in the indictment pleaded guilty and testified for the prosecution; the third, an attorney, had defaulted at the time of trial.

Commonwealth *v.* Camelio.

also testified that the defendant did not examine her and did not give her any type of treatment.

One Melvin Feldberg testified that the vehicle which was supposed to have been in the June 6, 1968, accident was owned by his fiancee and was in no such accident.[2] He had never heard of the driver of the other car, the attorney, the defendant, or either of the Fourniers.

Robert Rich, a claims adjuster for the Lumbermen's Mutual Insurance Company, testified that he was assigned a claim made by the attorney for damages arising out of the spurious accident on behalf of each of the four witnesses. As a result of a telephone conversation with the attorney, he received from him on September 11, 1968, photocopies of four medical reports bearing the defendant's signature,[3] one for each of the witnesses. These photocopies were introduced in evidence.

The reports set out various strains, sprains and contusions for each of the four and listed seven visits each for two of them and nine visits each for the other two. Each of the medical reports stated that shortwave diathermy treatment and medication for pain had been administered. The reports also set out the amounts of the medical bills — $68, $80, $84, and $63.

Rich settled the claims with the attorney for a total of $2,520. Drafts made out in the name of each claimant and the attorney were picked up by someone sent by the attorney. There was evidence that the attorney issued three checks to the defendant, two each for $84, and one for $143; the defendant admitted that two of the checks were

[2] The spurious accident was supposedly a collision between this vehicle driven by Melvin Feldberg in which the other three were passengers and an automobile driven by one Lanata insured by Lumbermen's Mutual Insurance Company.

[3] A handwriting expert testified that the signature was that of the defendant. Her qualification, to which the defendant excepted, was discretionary with the trial judge. There was no error. *Commonwealth* v. *Nefus,* 135 Mass. 533. That, as the expert testified, the use of an original was preferable to the use of a photocopy (albeit "well focused") did not make inadmissible the opinion or the photocopies. *Snow* v. *Massachusetts Turnpike Authority,* 339 Mass. 620, 623. They were properly submitted to the jury. See *Commonwealth* v. *Tucker,* 189 Mass. 457, 474-475.

deposited in his account and were in payment for bills "for treatment of these patients." He further admitted that he had received payment from the attorney for the bills he had submitted. Rich testified that he made an evaluation of these cases from the medical reports, using them to determine whether or not there was total or partial disability. Disability was the first consideration in accident settlements.

On the evidence, the jury could have found that the reports were palpably false and that this was obviously known to the defendant who had made them. Indeed, it is hard to see how the jury could have found otherwise. The jury was justified in concluding that the doctor and the lawyer were acting in concert and that the reports were fabricated to defraud. *Commonwealth* v. *Bannon,* 254 Mass. 320, 323. The extent of the defendant's participation makes it immaterial that the reports were given to the insurance company by the lawyer rather than directly by the doctor. Where both participate in committing the substantive offence "the acts of one may be considered against the others. *Commonwealth* v. *Harley,* 7 Met. 462, 465-466." *Commonwealth* v. *Hamblen,* 352 Mass. 438, 443, and cases cited. See *Commonwealth* v. *Mannos,* 311 Mass. 94, 108 (public officer could be convicted of soliciting a bribe through a private person); *Commonwealth* v. *Stasiun,* 349 Mass. 38, 47 (following the same rule but reversing because the charge made no distinction between conspiracy and participation in a substantive offense). Given participation in a substantive offense sufficient to impute the acts of one to the other, it becomes unimportant "that . . . [the defendant] may not have known precisely what use . . . [the attorney] might have made of the falsifications or whom they might deceive." *Commonwealth* v. *Hamblen,* 352 Mass. 438, 443. See *Nash* v. *Minnesota Title Ins. & Trust Co.* 159 Mass. 437, 442-443. See also Anderson, Wharton's Criminal Law and Procedure, § 583 ("Moreover, it is generally held that the intent of the accused to cheat, injure, or defraud a particular person is not a requisite of the statutory crime of false pretenses"). Under

such circumstances "[a]ll that is necessary to establish larceny by false pretenses is proof that a 'false statement . . . [was] made, with the intention to commit a fraud, and money or property . . . [was] thereby obtained' *Commonwealth* v. *Johnson,* 167 Ky. 727, 733." *Commonwealth* v. *Kiernan,* 348 Mass. 29, 48. The jury could have found a joint venture to defraud in which the defendant furnished his accomplice with false reports, the accomplice submitted them to the company, and the defendant received moneys as a result. This has been the paradigm of a number of cases resulting in conviction. See, e.g., *Commonwealth* v. *Mycock,* 315 Mass. 262; *Commonwealth* v. *Greenberg,* 339 Mass. 557; *Commonwealth* v. *Kiernan,* 348 Mass. 29, 46-48; *Commonwealth* v. *Hamblen,* 352 Mass. 438; *Commonwealth* v. *Leonard,* 352 Mass. 636. See also *Commonwealth* v. *Schnackenberg,* 356 Mass. 65, 72-74.

The defendant also urges that there was insufficient evidence that Rich relied on the medical reports and points to his failure properly to check the information, including obvious discrepancies, he received about the accident. The jury might have thought it strange but could still have believed his testimony that he settled the cases in reliance on the medical reports and used them in determining the fact and degree of disability, which was the primary consideration. (The report to Lumbermen's by its insured purported to indicate liability.) The jury could have found that the false statements in the reports were "*a* decisive influence" though not "the only inducement" (*Commonwealth* v. *Morrison,* 252 Mass. 116, 125; emphasis supplied) in the settlement of these cases. *Commonwealth* v. *Jacobson,* 260 Mass. 311, 327. See *National Shawmut Bank* v. *Johnson,* 317 Mass. 485, 490. That Rich himself may have been negligent does not exculpate the defendant. *Commonwealth* v. *Lee,* 149 Mass. 179, 184-185.

The defendant submitted to the trial judge a series of eight requests for instructions [4] which were denied and the

---

[4] "1. You must acquit the defendant unless you find beyond a reasonable doubt

defendant excepted. The defendant now argues only his exception to request numbered three (see fn. 4). He urges that it was error merely to have instructed the jury, as the trial court did, that as an element of the crime charged the victim must "have parted with something of value," "suffer[ed] a loss," and that consequently the verdict by the jury, which the bill of exceptions stated convicted the defendant of larceny in excess of $100, cannot stand. The trial judge might well have instructed the jury that to convict of the felony charged in the indictment it was necessary to find that the amount stolen exceeded $100 (*Commonwealth* v. *Griffin,* 21 Pick. 523, 526; *Commonwealth* v. *McKenney,* 9 Gray 114, 116, 118; *Commonwealth* v. *Carson,* 349 Mass, 430, 434) although the defendant himself testified that he had received payment from the attorney for the bills submitted in this case which amounted to $295 and that he had deposited two of the three checks (admitted in evidence) made out to him and drawn by the attorney as payment "for treatment of these patients." These two totaled at least $168.

that the defendant made false representations directly to the insurance company or its agent.

"2. You must acquit the defendant unless you find beyond a reasonable doubt that the defendant made the false representations with the intention of securing thereby monies to which he was in no way entitled.

"3. You must acquit the defendant unless you find beyond a reasonable doubt that the insurance company paid out some specific amount of money, in excess of one hundred dollars, as a result of its reliance on defendant's false representations.

"4. You must acquit the defendant unless you find beyond a reasonable doubt that the defendant's false representations were a decisive influence operating upon the mind of the insurance company inducing it to part with a specific sum of money.

"5. You must acquit the defendant unless you find beyond a reasonable doubt that the defendant knew of the falsity of the statements at the time they were made.

"6. You must acquit the defendant unless you find beyond a reasonable doubt that he participated in every essential step of the offense charged.

"7. If you find that false statements were made, but by some person other than the defendant, then you must acquit the defendant unless you find beyond a reasonable doubt that the defendant ordered such other person to make the statements and had full knowledge of the contents of the statements at the time they were made.

"8. Negligent and careless keeping of records is not the equivalent of the fraudulent intent which the prosecution must prove beyond a reasonable doubt."

We need not decide, however, whether, given such admissions,[5] a refusal to give such a requested instruction would require reversal on the ground that "a salient point of the case was not adequately covered," *Commonwealth* v. *Benders,* 361 Mass. 704, 707, or in view of the mandate that "[i]ssues of fact joined upon an indictment . . . shall, in the superior court, be tried by a jury . . . unless . . .[there is an election] to be tried by the court . . .." G. L. c. 278, § 2. *Commonwealth* v. *Moniz,* 336 Mass. 178, 180. See *Commonwealth* v. *Smith,* 357 Mass. 168, 178. Cf. *Commonwealth* v. *Ries,* 337 Mass. 565, 576-577.[6] In this case the thrust of the requested instruction was at least ambiguous. In context (see fn. 4) it appeared to deal with the false pretenses as the efficient cause of the larceny, and this had been adequately covered in the charge. In view of the defendant's admissions that he had received more than $100, the trial judge might well have concluded that the requested instruction was not addressed to this issue. This is not a case in which the request should have alerted the judge to the point now pressed by the defendant. See *Commonwealth* v. *Chapman,* 345 Mass. 251, 256; *Bell* v. *Dorchester Theatre Co.* 308 Mass. 118, 123; *Salter* v. *Leventhal,* 337 Mass. 679, 700. Under the circumstances, the amount lost by the insurance company and the amount received by the defendant apparently not having been made an issue,[7] it was incumbent on the defendant to make an unequivocal request for an instruction that conviction of the felony required a finding by the jury that an amount in excess of $100 had been stolen or to call the court's

---

[5] The record is not sufficient to permit the conclusion that the defendant's admissions on the stand constituted a stipulation taking the issue from the jury. Cf. *Commonwealth* v. *Gardner,* 241 Mass. 86, 91; *Commonwealth* v. *Ross,* 248 Mass. 15, 19; *Commonwealth* v. *Renfrew,* 332 Mass. 492, 494, in which stipulations to all the facts left nothing to be decided by the jury. Cf. also *Commonwealth* v. *Rowe,* 257 Mass. 172, 175.

[6] The Supreme Judicial Court has not determined whether the failure to give such an instruction is error where the amount stolen was admittedly over $100. But see *Commonwealth* v. *Tilley,* 327 Mass. 540, 545.

[7] Either of these amounts alone was enough to convict of the felony. *Commonwealth* v. *Mycock,* 315 Mass. 262, 266.

attention to this omission in the charge. *Commonwealth* v. *Hassan,* 235 Mass. 26, 32. *Commonwealth* v. *Cook,* 351 Mass. 231, 237. *Commonwealth* v. *Freeman,* 352 Mass. 556, 563. There is no indication in the bill of exceptions that this was done.

In view of the defendant's admission on the stand that he had received payments totaling $295, the lack of such an instruction in the charge, albeit on a salient point, did not raise "a substantial risk of a miscarriage of justice" (*Commonwealth* v. *Freeman,* 352 Mass. 556, 564) so as to impel us to reverse. *Commonwealth* v. *McDonald,* 264 Mass. 324, 336-337.

*Exceptions overruled.*