COMMONWEALTH vs. HARRY R. DUSSAULT.

Bristol.   November 13, 1973. — May 30, 1974.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Arrest.   Search and Seizure.   Probable Cause.   Identification.   Joint Enterprise.   Evidence, Common criminal enterprise.*

Evidence in a criminal case warranted a finding that soon after an armed robbery of a store a police officer in a nearby tavern had probable cause to arrest the defendant, who conformed to a description of one of the robbers which had been communicated to the officer; and upon arresting the defendant the officer validly searched his person.   [324-325]

On the evidence in a prosecution for armed robbery of a store, there was no error in a refusal to suppress identifications of the defendant by the victims at a police station lineup some two and one-half hours after the robbery.   [325-326]

At the trial of an indictment against a sole defendant for armed robbery of a store, where there was evidence that the defendant and an accomplice engaged in the robbery as a common criminal enterprise, there was no error in admitting evidence that soon after the robbery the accomplice, upon leaving a tavern near the store and finding his route thence obstructed, engaged in a shooting affray with police which eventually led to his capture, or in admitting in evidence the gun and ammunition used by the accomplice in the affray.   [326-327]

Two INDICTMENTS found and returned in the Superior Court on October 4, 1972.

Pre-trial motions to suppress evidence were heard by *Taveira, J.*, and the cases were tried before him.

*Kay Hodge* for the defendant.

*Donald R. Perry,* Assistant District Attorney, for the Commonwealth.

ARMSTRONG, J.   The defendant appeals under G. L. c. 278, §§ 33A-33G, from his convictions of armed robbery and assault by means of a dangerous weapon.   The

defendant briefs and argues (see Rule 1:13 of the Appeals Court, 1 Mass. App. Ct. 889 [1972]) three assignments of error relating to: (1) the denial of his pre-trial motion to suppress evidence seized as a result of his arrest; (2) the denial of his pre-trial motion to suppress the out-of-court identifications of the defendant made by the victim and his brother; and (3) the prejudicial effect of admitting in evidence the gun and ammunition of one Hathaway and connected testimony concerning Hathaway's attempted escape.

We summarize the evidence elicited at the voir dire on the pre-trial motions to suppress, which was the basis of the judge's extensive and detailed findings on those motions. On the night of April 26, 1972, Alfred Pacheco was working in Al's Package Store in Fairhaven. His brother Robert and Robert's ten year old son were there with him. At approximately 8:30 P.M. two men entered the store. One of them approached the counter and requested a six pack of Budweiser beer while the other remained close to the door. As Alfred Pacheco was about to give the man his change, the customer pulled out a pistol and announced, "This is a holdup." The other man, holding his hand under his jacket so as to create a bulge which Robert Pacheco feared was a gun, warned Robert and his son not to move or make any trouble and gave instructions to his confederate. Alfred Pacheco placed the money in a paper bag with the beer and the men left. They had been present in the well lighted store for several minutes.

Responding to Robert Pacheco's call, police arrived on the scene within minutes of the robbery and were given descriptions of the assailants. Officer Claflin, in a cruiser, received a radio transmission based on those descriptions and information provided by one Norgren to be on the lookout for a 1960 to 1964 white Chevrolet automobile, registration number U33298, and for two white men, the first being about thirty-five to thirty-seven years old, standing five feet eleven inches and weighing 200 pounds,

having a mustache and wearing gold rimmed sunglasses, dark trousers and his shirt out, and the second about the same age, standing five feet eight inches and weighing 150 to 160 pounds, having a mustache and light brown mod-style hair, and wearing a tan jacket and gray trousers. Claflin observed a vehicle matching that described in the bulletin parked in the rear of George's Place, a tavern two and one-half blocks from the scene of the robbery. He shone his flashlight through a window and saw a pair of sunglasses and a six pack of Budweiser beer in a bag on the front seat. Officer Duarte, summoned with other officers by Claflin, informed the latter that a six pack of Budweiser had been taken in the robbery.

As the officers entered George's Place, a man, later identified as Hathaway, and fitting the description of the heavier suspect, passed them as he was leaving the tavern. Duarte instructed other officers to watch him. Claflin and Duarte then inquired of a barmaid as to the ownership of the vehicle. She reported back that nobody admitted ownership. She did note, however, that two of the men, the defendant and one Antone Oliveira, the only two persons present unknown to Claflin, were acting very suspiciously. The officer then left the premises followed by the barmaid who was told by Officer Tate that Al's Package Store had been robbed. She responded, "I wonder if that has anything to do with the one dollar bills. They must have a lot of them," a reference to the fact that the defendant and his accomplices had been exchanging one dollar bills for ten dollar bills. Meanwhile, Hathaway, who had left the tavern as the police entered, attempted to drive the Chevrolet out of the parking lot but found his exit route obstructed. He left the Chevrolet, and as an officer shouted that Hathaway had a gun, Hathaway fired, precipitating a shootout which eventually resulted in his capture. Following the gunfire, Claflin and Tate reëntered George's Place. The barmaid pointed toward the defendant, who was playing

pool. Claflin noted that he had on gray trousers and a tan jacket and was about five feet eight inches, and he arrested him. A search incident to his arrest yielded $110, approximately the same amount of money discovered in the possession of Hathaway and Oliveira.

Between two and two and one-half hours following the robbery, the Pacheco brothers went to the Fairhaven and then to the New Bedford police stations to observe a lineup. Each brother separately viewed six men through a window of a door, and each positively identified the man wearing card number three, the defendant, with and without sunglasses. The lineup was composed of: the defendant; Oliveira, who was slight — about five feet six inches and 130 pounds — had dark skin and dark hair; two police cadets, both nineteen years of age and having mustaches, one of whom was five feet nine inches and weighed 160 pounds, while the other was five feet nine inches and weighed 180 pounds, the first wearing a green field jacket and blue trousers and the second wearing his uniform covered by a leather jacket; a police officer who was forty-two years of age, was five feet eight inches in height, weighed 145 pounds, and was dressed in civilian clothes; and another man who was not an officer and whose description is unavailable. There was testimony that the officer in charge of the lineup had attempted to select men roughly similar in appearance to the defendant and Oliveira.

1. "Whether the arrest of the defendant, and the search of his person, were constitutionally valid 'depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it — whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offence', *Beck* v. *Ohio,* 379 U. S. 89, 91 [1964]." *Commonwealth* v. *Stevens,* 362 Mass. 24, 26-27 (1972). Where police officers are en-

gaged in a coöperative effort in the performance of their duties, the knowledge of one officer may be imputed to all officers involved. *Commonwealth* v. *McDermott*, 347 Mass. 246, 249 (1964). *Commonwealth* v. *Chaisson*, 358 Mass. 587, 590 (1971). *Commonwealth* v. *Hawkins*, 361 Mass. 384, 386 (1972). In the case before us, the arresting officer had just witnessed a shootout with the defendant's suspected accomplice as the accomplice was leaving a tavern situated only a short distance from the scene of the robbery. At the moment of his arrest the defendant was standing in that tavern, conformed precisely to the detailed description possessed by Claflin, and had been described by the barmaid as acting suspiciously and having a large number of dollar bills. The judge was clearly correct in ruling that there was probable cause to arrest the defendant.

2. The judge's finding that the out-of-court identifications were "not impermissibly suggestive" was well supported by the evidence and will not be disturbed. *Commonwealth* v. *Murphy*, 362 Mass. 542, 548 (1972). *Commonwealth* v. *Cofield*, 1 Mass. App. Ct. 660, 666-667 (1974). "The standard by which such [pre-indictment] confrontations must be judged was articulated in *Stovall* v. *Denno*, 388 U. S. 293, 302 (1967), as whether in the 'totality of the circumstances' the confrontation was 'so unnecessarily suggestive and conducive to irreparable mistaken identification' that it amounted to a denial of due process of law. *Kirby* v. *Illinois*, 406 U. S. 682, 691 (1972). *Neil* v. *Biggers*, 409 U. S. 188, 198-199 (1972). *Commonwealth* v. *Leaster*, 362 Mass. 407, 411 (1972)." *Commonwealth* v. *Lifsey*, *post* 835 (1974). Here the identifying witnesses had an opportunity during the robbery to view the defendant for several minutes in a well lighted store. The confrontation occurred about two and one-half hours later at a time when the witnesses' memories were fresh. Due to commendable caution, the confrontation was staged as a station house lineup rather than as a field encounter. Compare

*Commonwealth* v. *Bumpus,* 354 Mass. 494, 501 (1968), cert. den. 393 U. S. 1034 (1969). The circumstances of this lineup compare favorably with those in the lineup upheld in *Commonwealth* v. *Lopes,* 362 Mass. 448, 452-453 (1972).[1]

3. At the trial the Commonwealth introduced evidence concerning the robbery and the events at George's Place which was substantially the same as that heretofore described at the voir dire. The defendant argues that it was reversible error to admit in evidence the testimony concerning, and the gun and ammunition used in, the shootout with Hathaway where the defendant was tried alone, and that the only purpose in introducing such evidence was to prejudice the jury. We disagree. Once a common criminal enterprise is established, the acts and statements of one of the participants during the course of and in pursuance of the joint venture become admissible against all of the participants. *Commonwealth* v. *Tivnon,* 8 Gray 375, 381 (1857). *Commonwealth* v. *Stasiun,* 349 Mass. 38, 49-51 (1965). *Commonwealth* v. *Flynn,* 362 Mass. 455, 476-477 (1972). This rule applies notwithstanding the fact that a defendant is tried separately rather than jointly. *Commonwealth* v. *Dellelo,* 349 Mass. 525 (1965). *Commonwealth* v. *Camelio,* 1 Mass. App. Ct. 296, 299 (1973). However, if such acts or declarations occurred after the end of the enterprise, they are not admissible against other participants. *Commonwealth* v. *McDermott,* 255 Mass. 575, 581 (1926). *Commonwealth* v. *Shea,* 323 Mass. 406, 414 (1948). Whether a given act occurred during the

---

[1] Although there is reference in the record to the use of a one-way mirror, a factor which might be of considerable concern (see *Allen* v. *Moore,* 453 F. 2d 970, 974 [1st Cir. 1972], cert. den. 406 U. S. 969 [1972]), the judge made no finding in this regard nor is the issue argued by counsel for the defendant. Moreover, as the defendant was wearing an identifying number and was told to put on sunglasses during the course of the lineup, it is highly unlikely that he was ignorant of it.

common enterprise or after its termination is a question of fact for the jury. *Commonwealth* v. *Mannos,* 311 Mass. 94, 104-106 (1942). *Commonwealth* v. *Dellelo, supra,* at 530. *Commonwealth* v. *Leavey,* 359 Mass. 744 (1971). It is settled, however, that a shooting in the course of an attempted escape following an armed robbery may be attributable to all of the participants in the robbery where there has been no appreciable interval between the alleged termination and the shooting, and where there has been no detachment from the common enterprise. *Commonwealth* v. *Green,* 302 Mass. 547, 555 (1939). *Commonwealth* v. *Lussier,* 333 Mass. 83, 90-91 (1955). *Commonwealth* v. *Dellelo, supra.* *LeBlanc* v. *Commonwealth,* 363 Mass. 171, 176-178 (1973).

In the case before us there was sufficient evidence to warrant the jury in finding that the defendant and Hathaway were linked in a common criminal enterprise. Thus, evidence of Hathaway's acts possessed probative value. Although the judge's instructions might have been more specific on the issue of the inadmissibility of Hathaway's acts if they were found to have occurred following the termination of the enterprise (see *Commonwealth* v. *Shea, supra*; *Commonwealth* v. *French,* 357 Mass. 356, 380 [1970]), we believe that the charge, to which no exception was taken, adequately covered the subject.

*Judgments affirmed.*