COMMONWEALTH *vs.* ROBERT SOWELL. July 7, 1986. *Homicide. Evidence,* Dying declaration, Consciousness of guilt. *Practice, Criminal,* Instructions to jury. *Joint Enterprise.*

Following a trial by jury in the Superior Court, the defendant was convicted of murder in the second degree on an indictment which charged him with murder in the first degree. Represented by new counsel on appeal, he alleges numerous errors in an effort to overturn his conviction. We affirm.

1. *Motion for required findings of not guilty.* The Commonwealth's evidence was presented at some length. The evidence indicated that on March 6, 1983, the defendant, accompanied by four others, went to the victim's apartment block. Once there, the defendant and another man (James Doherty) went to the victim's apartment. The purpose of their visit was not made entirely clear by the evidence but appeared to involve an effort to extort money from the victim. Shortly after the defendant and Doherty left the building, the victim was found in his apartment bleeding to death from a severe stab wound.

The defendant argues, first, that the trial judge erred by denying his motion for a required finding of not guilty on so much of the indictment as charged him with first degree murder; and, second, that similar error occurred in submitting the case to the jury with instructions on a possible verdict of second degree murder or voluntary manslaughter.

As to the first point, even if error is assumed for the sake of argument, the error would be harmless in view of the jury's acquittal of the defendant of first degree murder. See *Commonwealth* v. *Benoit*, 389 Mass. 411, 429 (1983); *Commonwealth* v. *Forde*, 392 Mass. 453, 456 (1984); *Commonwealth* v. *Hicks, ante* 139, 142 n.1 (1986).

As to the second point, the victim's adequately corroborated dying de-
clarations identifying the defendant as his killer, see *Commonwealth* v.
*Spear*, 2 Mass. App. Ct. 687, 695 (1974), and the nature and placement
of the fatal stab wound, both augmented by substantial evidence of con-
sciousness of guilt, see *Commonwealth* v. *Palmariello*, 392 Mass. 126,
143 (1984), were sufficient, under the governing standard, see *Common-
wealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979); *Commonwealth* v.
*Chappee*, 397 Mass. 508, 519 (1986), to warrant the jury's finding at the
close of the Commonwealth's case, and again at the close of all the evidence,
see *Commonwealth* v. *Kelley*, 370 Mass. 147, 149-150 (1976); *Common-
wealth* v. *Hastings, ante* 930, 931 (1986), that the defendant had committed
an unlawful killing with malice aforethought. Thus, the Commonwealth's
evidence was sufficient to sustain a conviction of second degree murder.

2. *Dying declarations*. Officer Joseph McLaughlin of the Boston police
was permitted to testify that shortly after his arrival at the scene, he bent
down and asked the victim what had happened. The victim responded:
"Help me . . . I'm dying." To Officer McLaughlin's question: "Who did
this to you? ", the victim answered, "Napoleon." Officer McLaughlin further
testified that he asked the same question two or three more times but all
the victim gave for an answer was that "a Napoleon did it." It was stipulated
that the defendant's nickname was "Napoleon." The defendant testified that
he was also known as "Napa." After an extensive voir dire, the trial judge
admitted the victim's identification (through the testimony of Officer
McLaughlin and testimony to the same effect by another police officer)
under the dying declaration exception to the hearsay rule.

The admission of the evidence was proper. In determining admissibility,
the trial judge followed the requirements set forth in *Commonwealth* v.
*Dunker*, 363 Mass. 792, 794-795 (1973), and *Commonwealth* v. *Key*, 381
Mass. 19, 22-23 (1980), for the consideration of dying declarations. In
particular, the judge gave sufficient attention to the element of the dying
declaration exception that requires that the victim be aware of his imminent
death when he makes the incriminating statements. See *Commonwealth* v.
*Nolin*, 373 Mass. 45, 50 (1977). On the evidence, the judge was justified,
and the jury would have been justified, in finding that the victim's statements
constituted dying declarations.

Further, there was no violation of the principles stated in *In re Winship*,
397 U.S. 358, 359 (1970), in the admission of the statements or in the jury
instructions concerning their status as evidence. "Under traditional Massa-
chusetts procedure, the judge and then the jury are to determine whether
the requirements for a dying declaration have been established by a prepon-
derance of the evidence." *Commonwealth* v. *Key*, 381 Mass. at 22. The
trial judge followed this procedure in admitting the statements. The judge
also carefully instructed the jury on all the principles applicable to their
consideration under the dying declaration exception. His instructions

adequately explained the relationship between the preponderance of the evidence standard explained in the *Key* case and the role of the statements with respect to the Commonwealth's ultimate burden of establishing the defendant's guilt beyond a reasonable doubt. We do not think it was necessary for the trial judge to caution the jury in his instructions on the possible unreliability of hearsay statements in general. We also note the lack of any objection to the instructions on the subject of dying declarations by the defendant's experienced trial counsel.

3. *Consciousness of guilt issues*. The evidence relied upon by the Commonwealth as demonstrating the defendant's consciousness of guilt was properly admitted by the trial judge. The evidence included, among other things, that the defendant had threatened one witness for the prosecution on at least three occasions. First, he yelled at her a week after the stabbing that she had "better plead the Fifth if [she] knew what was good for [her]. " Second, the defendant came to her house at midnight and threatened to "saw [her] fucking head off and mail it to [her boyfriend]." Third, he warned her that "[she had] better stop talking to people." Another prosecution witness testified that the defendant told him, weeks after the stabbing, that "all they had was that somebody said it was a Napa. There's plenty of Napas around. It could be one in Forest Hills. It could be one in Jamaica Plain." We do not agree with the defendant that this evidence was so ambiguous or consistent with a theory of innocence that its exclusion was required. The weight to be given to the evidence, and the parties' conflicting interpretations of it, were, as the trial judge in his discretion could have decided, a matter properly for the jury. See *Commonwealth* v. *Best*, 381 Mass. 472, 495 (1980).

Nor do we find error in the trial judge's instructions on the consciousness of guilt evidence. The instructions were thorough and generally in conformance with the principles set forth in *Commonwealth* v. *Toney*, 385 Mass. 575, 585 (1982). (Again, the defendant's experienced trial counsel made no objection to the instructions.) Specifically, the trial judge did not commit error by characterizing the consciousness of guilt evidence as an "implied admission." See Liacos, Massachusetts Evidence 281 (5th ed. 1981) ("A variety of actions or statements may give rise to an implied admission of 'consciousness of guilt' "). The defendant was not entitled to a "consciousness of innocence instruction." See *Commonwealth* v. *Martin*, 19 Mass. App. Ct. 117, 123-124 (1984). The fact that consciousness of guilt evidence does not constitute evidence of malice, see *Commonwealth* v. *Lowe*, 391 Mass. 97, 108 n.6, cert. denied, 469 U.S. 840 (1984), did not require a jury instruction so stating. Considered as a whole, the instructions conveyed to the jury the basically corroborative nature of any evidence finally determined by them to display the defendant's consciousness of guilt.

4. *Jury instructions*. The defendant raises objections to the final jury instructions on the law of joint venture and manslaughter. Because no objection was made at trial our review is limited to whether these aspects

of the charge created a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967); *Commonwealth* v. *Brown*, 394 Mass. 510, 516 (1985).

(a) *Joint venture*. The defendant first claims that the judge's unsolicited charge on joint venture was not warranted by the evidence. See *Commonwealth* v. *Nadworny*, 396 Mass. 342, 361 (1985); *Commonwealth* v. *Brown, supra; Commonwealth* v. *Dussault*, 2 Mass. App. Ct. 321, 326-327 (1974). "A judge may instruct the jury on the basis of the evidence (*Commonwealth* v. *Hobbs*, 385 Mass. 863, 870-871 [1982]) and is not bound by the legal theories advanced by the Commonwealth." *Commonwealth* v. *Jones*, 16 Mass. App. Ct. 931 (1983), citing *Commonwealth* v. *Kenneally*, 10 Mass. App. Ct. 162, 176 (1980). The evidence warranted findings by the jury that the defendant had participated with others in a plan to extort money from the victim and that he had aided Doherty in a fight shortly before the fatal stabbing. In the event the jury concluded that the defendant had not actually stabbed the victim, we think the evidence warranted an alternative finding that he had aided Doherty in the stabbing. Thus, the requisite evidentiary basis for a charge on joint venture was present.

We also find no error in the substance of the joint venture charge. The defendant's acknowledgement in his brief that the trial judge instructed the jury "that mere presence combined with knowledge was insufficient" to sustain his conviction on a joint venture theory undercuts his assertion that this principle was not explained. The instructions adequately informed the jury that participation was necessary to show criminal involvement in a joint venture. Additionally, on the evidence, the judge's failure to instruct expressly that a joint venture has a beginning and an end, see *Commonwealth* v. *Brown, supra,* does not create a substantial likelihood of a miscarriage of justice. Moreover, even if the jury could have found that the defendant may have harbored some intention to withdraw from the venture, the evidence would not have warranted a finding that he had effectively communicated his intention to Doherty. See *Commonwealth* v. *Farnkoff*, 16 Mass. App. Ct. 433, 447 (1983). The evidence also indicated that there was "no appreciable interval between the alleged termination [of the joint venture] and the [stabbing]. . . ." See *Commonwealth* v. *Dussault, supra* at 327. See also *Commonwealth* v. *Green*, 302 Mass. 547, 555 (1939). There was no basis for a withdrawal instruction, which, in any event, was not requested by the defendant's trial counsel, perhaps for strategic reasons. The other criticisms of the joint venture instructions are without merit. We conclude that the instructions on this subject, taken as a whole, were adequate.

(b) *Manslaughter*. In his main instructions the trial judge defined the elements of both degrees of murder and the elements of voluntary manslaughter, explaining the latter by contrasting it with involuntary manslaughter. The instructions were no entirely clear, however, as to whether the jury were being given the opportunity to find the defendant guilty of involuntary manslaughter. During their deliberations, the jury asked for "a layman's

description of the differences between manslaughter and first and second degree murder." In the course of his redefinition of the elements of the various kinds of homicide, the judge, with reference to manslaughter, instructed the jury "that the only aspect of manslaughter [you may consider] is voluntary manslaughter." There was no objection to this instruction at the trial, but error is now claimed on appeal.

The test to determine whether an involuntary manslaughter verdict is open to the jury is whether any view of the evidence will support a finding of that offense. See *Commonwealth* v. *LeBlanc*, 373 Mass. 478, 491 (1977); *Commonwealth* v. *Brown*, 387 Mass. 220, 227 (1982). The evidence here (that a knife other than the victim's had produced a deep stab wound penetrating into the fleshy portion of the victim's inside upper thigh to the bone, severing more than half of the main artery in the leg, and causing massive bleeding which led to the victim's death) would not warrant a finding by the jury of reckless as distinguished from intentional conduct. See *Commonwealth* v. *Bray*, 19 Mass. App. Ct. 751, 762-763 (1985). Because a deadly weapon was used to inflict a wound inconsistent with the reckless use of the weapon, the case was unsuitable for an instruction on involuntary manslaughter and falls within the rule stated in decisions such as *Commonwealth* v. *Santo*, 375 Mass. 299, 306 (1978), and *Commonwealth* v. *Evans*, 390 Mass. 144, 152 (1983).

*Judgment affirmed.*

*Robert A. George* for the defendant.

*Margaret Steen Melville*, Assistant District Attorney (*John V. Mahoney*, Assistant District Attorney, with her) for the Commonwealth.