Smith CORDOBA, Petitioner,

v.

David R. HARRIS, Superintendent, Green
Haven Correctional Facility,
Respondent.

No. 79 Civ. 311 (CES).

United States District Court,
S. D. New York.

June 29, 1979.

Smith Cordoba, pro se.

Robert Abrams, Atty. Gen. of the State of New York, by Rosalind S. Fink, Asst. Atty. Gen., New York City, of counsel, for respondent.

## MEMORANDUM DECISION

STEWART, District Judge:

Smith Cordoba, proceeding *pro se*, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was indicted in New York County on August 19, 1974 on four counts of illegally possessing and selling cocaine. His first two trials ended in mistrials.[1] His third trial resulted in his conviction, on September 30, 1976, of two counts of selling a controlled substance in the first degree. N.Y. Penal Law § 220.43 (McKinney 1978). On November 15, 1976, he was sentenced to the statutory minimum of 15 years to life[2] on each count, the sentences to be served concurrently. Petitioner's appeal to the Appellate Division was denied without an opinion on June 6, 1978, *People v. Cordoba*, 63 A.D.2d 1123, 405 N.Y.S.2d 621. The Court of Appeals denied leave to appeal.

Petitioner's indictment and conviction arose out of two sales of cocaine to undercover agents. On the evening of June 18, 1974, petitioner sold an eighth of a kilogram to two undercover New York City police officers for $3,600 at the apartment of an accomplice in Queens. On July 2, 1974, Petitioner sold a quarter of a kilogram to two undercover police officers for $7,000 at the same apartment. At petitioner's trial, both the officers participating in the buys and the backup and surveillance teams testified. In addition, a police chemist testi-

---

1. Petitioner's first trial ended in a hung jury on March 22, 1975. His second trial ended in a mistrial on June 30, 1976 when petitioner was permitted to discharge his court-appointed attorney after expressing no confidence in him.

Petitioner, an indigent, has been in prison since his arrest in 1974, and is currently serving the sentence imposed.

2. N.Y. Penal Law § 70.00 (McKinney 1975).

fied that the substance bought in each of these two sales did indeed contain quantities of cocaine.

Petitioner does not here challenge the substantiality of the evidence against him. Rather, he claims that errors by the trial judge in his rulings and charge to the jury deprived him of his right to due process of law under the Fourteenth Amendment. In addition, he maintains that the decision of the trial judge to allow him to proceed as his own attorney deprived him of his Sixth Amendment right to counsel. Before proceeding to the merits of petitioner's claims, we must determine whether he has exhausted his state remedies[3] by presenting fully and fairly to the state appellate courts the constitutional claims made here. *Picard v. Connor*, 404 U.S. 270, 276, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Wilson v. Fogg*, 571 F.2d 91, 93 (2d Cir. 1978); *United States ex rel. Gibbs v. Zelker*, 496 F.2d 991, 994 (2d Cir. 1974).

First, petitioner alleges that the trial court erred in stating to the jury that the District Attorney had drawn conclusions of fact in his summation.[4] In his brief submitted to the state appellate court, petitioner's attorney argued that this instruction would lead the jury to give weight to the summation as evidence. Nowhere did he hint that this claim was of constitutional dimension. Therefore, it is not enough that the petitioner presented the state court "with an opportunity to apply controlling legal principles to the facts", *Picard v. Connor, supra*, 404 U.S. at 277, 92 S.Ct. at 513, but rather to fulfill the exhaustion requirement, petitioner must also have presented the state courts with the constitutional theory he intended to raise. Not having done so, this claim is unexhausted and petitioner is precluded from raising it here.[5]

Second, petitioner alleges that the trial judge erred in not instructing the jury that no inference can be drawn from petitioner's failure to testify on his own behalf, even though no such instruction was requested. Petitioner's brief on appeal clearly indicates that this point was argued solely on state law grounds and is therefore not exhausted.[6]

Third, petitioner alleges that the trial judge erred in not allowing a letter he had written to be read by the jury. This claim, however, was not raised in any fashion by the petitioner on his appeal to the Appellate Division. His failure to raise it there precludes us from reviewing it here.[7]

---

3. Even though neither the petitioner nor the state have briefed this issue, and it can be claimed that the state has conceded it, this Court must satisfy itself that available state remedies have, in fact, been exhausted. *Kaplan v. Bombard*, 573 F.2d 708, 710 n. 1 (2d Cir. 1978); *Wilson v. Fogg*, 571 F.2d 91, 94 n. 5 (2d Cir. 1978); *Lunz v. Henderson*, 533 F.2d 1322, 1324 n. 3 (2d Cir.), *cert. denied*, 429 U.S. 849, 97 S.Ct. 136, 50 L.Ed.2d 122 (1976).

4. The trial transcript reads as follows:
   THE COURT: . . . I have now heard all the evidence and through argument of the District Attorney who bears the burden of proving his case beyond a reasonable doubt. *You have heard the conclusion which he believes should be drawn from the evidence.* (Tr. 232) (emphasis added).

5. Even if this Court were to reach the merits, this claim is of doubtful validity since errors in jury instructions are normally matters of state law and are not cognizable on habeas review unless the error reaches constitutional magnitude, when analyzed upon the whole record. *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct.

396, 38 L.Ed.2d 368 (1973); *Smith v. Montayne*, 505 F.2d 1355, 1359 (2d Cir. 1974), *cert. denied*, 423 U.S. 856, 96 S.Ct. 106, 46 L.Ed.2d 81 (1975); *Denti v. Comm'r of Correction Services*, 421 F.Supp. 557, 568 (S.D.N.Y.1976); *Glucksman v. Birns*, 398 F.Supp. 1343, 1352 (S.D.N.Y.1975).

6. See note 5 *supra*.

7. We note that upon return to the state courts a potential problem is raised by N.Y.C.P.L. 440.10(2)(c) (McKinney 1971) which precludes vacation of a judgment based on an issue not raised on appeal. However, the rule in this circuit is that because a post-conviction remedy may be had at the discretion of the appellate courts, notwithstanding N.Y.C.P.L. 440.-10(2)(c), comity dictates that we not decide the merits of the constitutional claims until the state has had the opportunity, in the first instance to do so. *Wilson v. Fogg*, 571 F.2d 91, 94 n. 5 (2d Cir. 1978); *Cameron v. Fastoff*, 543 F.2d 971, 977 n. 5 (2d Cir. 1976); *United States ex rel. Gibbs v. Zelker*, 496 F.2d 991, 994 n. 6 (2d Cir. 1974).

Petitioner further alleges that the trial judge committed error in his response to the jury when, during their deliberations, they asked why they could not see the letter. On appeal, petitioner's counsel characterized the judge's answer as discussing the contents of the letter. Petitioner's brief on appeal referred to a violation of "fundamental principles" but no further indication was given to the state courts that a constitutional issue was being raised. The court could well have read this claim without realizing a federal constitutional issue was involved *United States ex rel. Gibbs v. Zelker, supra,* 496 F.2d at 994. As a result, petitioner has failed to exhaust his state remedies as to this claim, precluding us from reviewing it here.

Lastly, petitioner asserts that he was permitted to proceed *pro se* at his trial without making a knowing and intelligent waiver of his right to counsel, in violation of his Sixth Amendment rights. On his state appeal, petitioner's counsel in his brief argued, "this does not add up to an intentional unequivocal, knowing and intelligent waiver of the constitutional right to counsel as discussed by the Court of Appeals in *People v. Reason,* 37 N.Y.2d 351, 372 N.Y.S.2d 614, 334 N.E.2d 572 (and the authorities cited therein)". Reply Brief at 3. The question is whether this sufficed to put the Appellate Division on notice that a constitutional argument based on the Sixth Amendment was being made.

We think it did. In *Picard, supra,* 404 U.S. at 277, 92 S.Ct. at 513, the court conceded that, "obviously, there are instances in which the ultimate question for disposition will be the came despite variations in the legal theory or factual allegations urged in its support." Here, irrespective of whether petitioner's claim was based solely on state law grounds, his characterization

of a "constitutional right to counsel" should have alerted the Appellate Division to the federal constitutional claim that is raised here. Therefore, we conclude that petitioner has exhausted his state remedies with respect to this claim, and we turn now to its merits.[8]

It will be helpful at this point to recount the series of events that led up to petitioner's request to proceed *pro se.*

Toward the end of petitioner's second trial a plea-bargain offer[9] was made to him through his attorney. Petitioner, proclaiming his innocence, became extremely upset with his attorney and expressed a desire to have him removed from his case. The trial judge, after repeatedly inquiring of the petitioner whether he really desired to fire his attorney, and whether he understood the consequences of such an action, granted petitioner's request. Thereupon, a mistrial was declared and petitioner was remanded to prison to await yet a third trial.

Three months later, at the start of his third trial, petitioner, appearing with his second court-appointed counsel, was once again offered the same plea-bargain arrangement. Petitioner said he would accept only on the condition that he be sent to a hospital. The trial judge explained that this would be beyond his power, but that he would order that petitioner be examined to determine whether he in fact did require hospitalization. When petitioner remained obdurate, the court apparently concluded that he did not wish to plead guilty and was about to begin the process of jury selection, when, after a short recess, the petitioner asked that he be allowed to dispense with his attorney and proceed *pro se.* Part of this application was a request that his first counsel, whom he had dismissed at the close of his second trial, be re-appointed. The trial judge denied petitioner's request that

---

8. Even though some of petitioner's claims have not been exhausted, we are not precluded from reaching the merits of his exhausted claim since the substance of the various claims are unrelated. *Annunziato v. Degan,* 440 F.2d 304, 305 (2d. Cir. 1971); *Levy v. McMann,* 394 F.2d 402, 404 (2d Cir. 1968). Further, this claim has not been waived since petitioner objected at the trial to his lack of counsel.

9. The offer was three and a half years to life with credit for time served. Since petitioner at this time had already been in prison for approximately two years, this offer meant serving another year and a half and then being eligible for parole. (Pretrial hearing [hereinafter cited as PT.] at p. 8).

his first counsel be re-appointed, saying, "I'm not going to assign Mr. Perl [his first counsel]. That's all water over the dam. No defendant, not you or any other defendant can dictate what attorneys are going to be assigned". (Pre-trial hearing [hereinafter cites as PT.] at p. 26.)

With respect to petitioner's application to proceed *pro se*,[10] the trial judge first questioned petitioner as to whether he under-

10. The colloquy between the court and petitioner (through an interpreter) went as follows:

COURT: Mr. Cordoba, before we bring in any perspective (sic) jurors, I think this morning you started to indicate you had an application to the Court concerning representing yourself in this case. I will listen to your application now.

THE DEFENDANT: I am going to handle my own case alone, completely alone. I want all my records and I do not wish any help from the gentleman here with all my respect at least leave me alone. That's all I can say. That's all I have left.

THE COURT: All right. Now, why do you want to do this?

THE DEFENDANT: I have been waiting for 26 months to finalize my situation. How are you going to—I don't know—this is an injustice. I don't know why Mr. Fried (the District Attorney) has such vengeance against me. Why? Why? I have never committed a crime against him. Why does he has (sic) that rancor. He hates me this way.

THE COURT: Mr. Cordoba, you do not have an absolute right to represent yourself. Before I can decide your application, I must satisfy myself that you are competent to handle your own defense and that you intelligently are waiving the assistance of an attorney.

Now, the way you are talking to me now in going off into other areas of vengeance of Mr. Fried as you call it makes me—

THE DEFENDANT: Do not interpret me.

THE COURT: Makes me wonder if you are competent to handle your own case.

THE DEFENDANT: First, I am telling you, I am not really insulting Mr. Fried with all respect. I'm explaining why he—I have that impression that he is against me, but I am not really insulting Mr. Fried. If I had said a word that was not proper with due respect, I ask his forgiveness.

THE COURT: Do you actually believe, Mr. Cordoba, that you could take part in selecting a jury and cross examining witnesses?

THE DEFENDANT: What happened is actually what I believe is all you people want me to be in jail, to remain in jail. I don't want to do anything. I will try to handle my own defense alone. No matter how I look at it. There's nothing I can do.

THE COURT: How old are you, Mr. Cordoba?

THE DEFENDANT: I am 32 years old.

THE COURT: How much education have you had?

THE DEFENDANT: I didn't study whatever I know, I learned of my own.

THE COURT: You never went to school?

THE DEFENDANT: About two years only.

THE COURT: And where was that in Colombia?

THE DEFENDANT: I am not Colombian, Your Honor.

THE COURT: Then where?

THE DEFENDANT: I am a Panamanian. In Panama, and after that I never studied further. I had learned—learned on my own, on my own. It is useless to explain and to tell you what they are doing to me. If I keep on talking and all of that you are going to think and believe that I really behaving myself very rudely.

THE COURT: When you had your other trials, were you able to observe what went on so that you could do the same things yourself now?

THE DEFENDANT: Yes.

THE COURT: Well, for instance, if you were examining perspective (sic) jurors, what sort of questions would you ask them?

THE DEFENDANT: Accordingly, what I learned with my lawyer. Well, the questions that he asked. I will have to ask the same questions with due respect. I would like to know why it is they departed that lady, the lady that was the number one witness for me. She is the one who can tell whether I am guilty in this case, and then I will be satisfied that she would be here and that she could say I was an accomplice to this case or not.

THE COURT: You see now, you are degressing (sic) and this is just a thing that I am worried about. If you try your own case, you won't stick to the legal issues. That's why lawyers are trained because they have to stay within certain guidelines. I am not sure that you can do that.

THE DEFENDANT: With all my heart that you please grant to me this favor I am asking from you.

THE COURT: And you are positive you want to do it.

THE DEFENDANT: I do want—I can do the best I can. At this moment, I rather than being in this problem, it is my wish to die. . . . I have lost the lawyer that knows my case. I don't want another lawyer who don't know my case.

Well, I know that if I proceed with the gentleman here, I know I'm going to loose (sic) the case. Well, for that, I loose (sic) it myself acting as my own lawyer without a lawyer.

.     .     .     .     .

THE DEFENDANT: Do you believe that the gentleman here, I don't know his name, in the short time that he has my case that a case that

stood the consequences of his request, and whether he was capable of conducting his own defense. After completing these inquiries, the trial judge found that petitioner's *pro se* application was "unequivocally and . . . timely made", (PT. p. 26) and that "I'm further satisfied that you intelligently are making this waiver" (PT. p. 26). The trial judge made these findings, despite the fact that his inquiries revealed that the petitioner could speak little English,[11] had no formal education, and understood nothing about court procedure or defense tactics. Petitioner's second counsel was, however, retained to be available to give advice if the petitioner so desired.

At the jury selection and the trial, the petitioner effectively stood mute.[12] He made no opening or closing statements, cross-examined no witness, and presented no defense. When asked by the trial judge if he wished to cross-examine, the petitioner repeatedly replied to the effect that he could not because he had no lawyer.

Petitioner asks us to hold that, based on this record, he was denied his Sixth Amendment right to counsel. When a defendant is faced with the choice of proceeding with counsel he is not entirely happy with or defending *pro se*, the trial judge must satisfy himself that if the defendant chooses to proceed *pro se*, he does so knowingly, with a full understanding of the risks involved. This consists primarily of the judge instructing the defendant that,

has a lot of records, minutes, you think he had enough time to study the case.

THE COURT: Well, my observation is Mr. Cordoba, if I were to change attorneys again, you would be in the same position because I think you would like to get the case over with and decide it one way or the other.

So, I have considered, you have now made your application, do the People wish to respond to the application in any fashion?

MR. FRIED: Your Honor, with respect to the application by the defendant to proceed *pro se*, would it be proper to inquire of the defendant since he speaks no English whether possibly he should be made aware that inability to speak English may in fact hamper his ability to represent himself in his case, and possibly he should be made aware of that problem should he proceed as his own lawyer.

THE COURT: Do you have anything to say about that Mr. Cordoba?

THE DEFENDANT: Regarding that, well, let the interpreter take care of that or give me the other lawyer I had, then I will remain quiet, and peaceful, and then let Mr. Pearl do everything.

.     .     .     .     .

THE COURT: Those are little problems, Mr. Cordoba. I'm not going to assign Mr. Pearl. That's all water over the dam. No defendant, not you or anyother defendant can dictate what attorneys are going to be assigned.

After listening to your application, I am satisfied that your application to proceed by yourself is being made unequivocally and it is timely made. I'm further satisfied that you intelligently are making this waiver or asking to make the waiver and from what I have seen so far, your conduct has been proper so that at this point, it would not prevent your representing yourself.

THE DEFENDANT: Okay.

THE COURT: So my inclination at this time is to grant your application, but I am going to retain Mr. Goldenberg in the Courtroom throughout the trial. If you don't want him to sit at the table with you, that's all right with me. He can sit over here somewhere, but I think in your best interest, you should have a lawyer in the room because the time might come when you want to ask some advice.

.     .     .     .     .

THE DEFENDANT: Your Honor, excuse me, he has something in here before we start the trial, I want to put this in the record so that it will become part of the record. It is written in the English language.

THE INTERPRETER: He wants me to read the letter, but the letter is in English, Your Honor, it is addressed for you to read it, but it is in the English language, so I don't have to read it to Your Honor.

THE DEFENDANT: I want this to be part of the record.

THE COURT: Very well. You may be seated. Thank you.

(Whereupon the Judge perused the letter.)

THE COURT: Mr. Cordoba, everything that you have put in here you have told me orally today, but I will put it in the record and it will be in the official file; is that satisfactory to you?

The letter, asked for time to appeal to the administrative judge to reappoint Mr. Perl (his first counsel) and also complained about his second counsel's lack of preparation time.

11. The petitioner communicated at all times with the Judge through an interpreter.

12. His only request was that the letter he had written requesting a delay to get his first counsel reappointed, be read by the jury.

he has the choice between defense by a lawyer and defense *pro se*; that he will be given a reasonable time to make the choice; that it is advisable to have a lawyer, because of his special skill and training in the law, and that the judge believes it is in the best interests of the defendant to have a lawyer; but that he may, if he elects to do so, waive his right to a lawyer and conduct and manage his defense himself.

*United States ex rel. Martinez v. Thomas*, 526 F.2d 750, 755 (2d Cir. 1975).

■ However, the judge's duty does not end there. Before he may grant the *pro se* application he must find that the election [13] was made "knowingly and intelligently", *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *United States ex rel. Martinez v. Thomas*, 526 F.2d 750, 756 (2d Cir. 1975) *United States v. Rosenthal*, 470 F.2d 837 (2d Cir. 1972), *cert. denied*, 412 U.S. 909, 93 S.Ct. 2298, 36 L.Ed.2d 975 (1973); *United States v. Spencer*, 439 F.2d 1047, 1050 (2d Cir. 1971); *United States v. Curtiss*, 330 F.2d 278, 279 (2d Cir. 1964), or that the defendant made his choice with his "eyes open". *Adams v. United States ex rel. McCann*, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *United States v. Plattner*, 330 F.2d 271, 276 (2d Cir. 1964).

■ Factors that are taken into account in determining whether the choice is knowing, intelligent and made with eyes open, include the defendant's educational background, *United States ex rel. Martinez v. Thomas, supra*, 526 F.2d at 755, his familiarity with court procedure, *United States*

*ex rel. Konigsberg v. Vincent*, 526 F.2d 131, 134 (2d Cir. 1975), *cert. denied*, 426 U.S. 937, 96 S.Ct. 2652, 49 L.Ed.2d 388 (1976); *United States v. Harrison*, 451 F.2d 1013 (2d Cir. 1971) and the possible effect lengthy incarceration may have had on his state of mind. *United States ex rel. Noll v. Fay*, 219 F.Supp. 262, 268 (S.D.N.Y.1963). In short, in making his decision, the trial judge must evaluate the totality of the defendant's situation. *United States v. Duty*, 447 F.2d 449, 450 (2d Cir.1971).

■ In addition, while the defendant's subsequent ineffectual conduct of his *pro se* defense cannot serve to invalidate his election [14] it may be taken into consideration in deciding whether the defendant's initial choice was voluntarily made, or whether he proceeded *pro se* because he felt he had no other choice. *United States v. Calabro*, 467 F.2d 973, 985 (2d Cir.), *cert. denied*, 410 U.S. 926, 93 S.Ct. 1357, 35 L.Ed.2d 587 (1973).

Applying these principles of law to the facts of this case, it is clear that while the trial judge asked the right questions, he got all the wrong answers, a fact which he proceeded largely to ignore. The trial judge inquired into the defendant's formal educational background:

THE COURT: How much education have you had?

THE DEFENDANT: I didn't study whatever I know I learned of my own.

THE COURT: You never went to school?

THE DEFENDANT: About two years only. (PT. p. 16).

It was found that the petitioner had virtually no education. The trial judge asked

---

**13.** In this circuit, the decision to proceed *pro se* is viewed as an election of one constitutional right over another, rather than as a "waiver" of the right to counsel. *United States v. Bubar*, 567 F.2d 192, 203 n. 18 (2d Cir.), *cert. denied*, 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977); *United States ex rel. Konigsberg v. Vincent*, 526 F.2d 131, 133–34 (2d Cir. 1975), *cert. denied*, 426 U.S. 937, 96 S.Ct. 2652, 49 L.Ed.2d 388 (1976); *United States ex rel. Martinez v. Thomas*, 526 F.2d 750, 756 n. 8 (2d Cir. 1975).

Under either formulation however, the decision must be knowingly and intelligently made.

**14.** This is analogous to the principle that a *pro se* defendant cannot attack his representation of himself on ineffective assistance of counsel grounds. *Faretta v. California*, 404 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). *United States ex rel. Testamark v. Vincent*, 496 F.2d 641 (2d Cir. 1974), *cert. denied*, 421 U.S. 951, 95 S.Ct. 1685, 44 L.Ed.2d 105 (1975).

the petitioner whether he was familiar enough with court procedure to conduct his own defense:

THE COURT: Do you actually believe, Mr. Cordoba, that you could take part in selecting a jury and cross examining witnesses?

THE DEFENDANT: What happened is actually what I believe is all you people want me to be in jail, to remain in jail. I don't want to do anything. I will try to handle my own defense alone. No matter how I look at it. There's nothing I can do.

(PT. p. 15).

.　　　.　　　.　　　.

THE COURT: Well, for instance, if you were examining perspective (sic) jurors, what sort of questions would you ask them?

THE DEFENDANT: Accordingly, what I learned with my lawyer. Well, the questions that he asked. I will have to ask the same questions with due respect. I would like to know why it is they departed that lady, the lady that was the number one witness for me. She is the one who can tell whether I am guilty in this case, and then I will be satisfied that she would be here and that she could say I was an accomplice to this case or not.

THE COURT: You see now, you are degressing (sic) and this is just a thing that I am worried about. If you try your own case, you won't stick to the legal issues. That's why lawyers are trained because they have to stay within certain guidelines. I am not sure that you can do that. (PT. p. 17).

The inquiry elicited such rambling responses that the judge expressed his own doubt that the petitioner could follow court procedure effectively. The trial judge also knew from his earlier colloquy with the petitioner regarding the plea-bargain how worried the petitioner was about his health and how upset he was about having spent two years in jail without a formal resolution of his indictment. These feelings came forth once again during the petitioner's *pro se* application:

THE DEFENDANT: I have been waiting for 26 months to finalize my situation. How are you going to—I don't know—this is an injustice. I dont know why Mr. Fried (the District Attorney) has such vengence (sic) against me. Why? Why? I have never committed a crime against him. Why does he has (sic) that rancor. He hates me this way. (PT. p. 14).

This statement should have alerted the trial judge that the petitioner was not in a rational frame of mind, and was unable to intelligently decide between staying with his counsel, or electing to proceed *pro se*.

In addition, the petitioner's inaction and comments during his trial indicate that his election to proceed *pro se* stemmed from a feeling he had "no other choice", and was not the result of a voluntary decision on his part. *United States v. Calabro, supra,* 467 F.2d at 985. Indeed, the trial judge should have discerned that this was the petitioner's reasoning from this exchange:

THE COURT: And you are positive you want to do it.

THE DEFENDANT: I do want—I can do the best I can. At this moment, I rather than being in this problem, it is my wish to die. I have lost the lawyer that knows my case. I don't want another lawyer who don't know my case. (PT. p. 18).

.　　　.　　　.　　　.　　　.

Well, I know that if I proceed with the gentleman here, I know I'm going to loose (sic) the case. Well, for that, I loose (sic) it myself acting as my own lawyer without a lawyer. (PT. p. 20).

This expression of resignation is far removed from the principles of *Faretta, supra,* 422 U.S. at 834, 95 S.Ct. 2525, where the right to proceed *pro se* was upheld, in part on the theory that where the defend-

ant believed he could do a better job than an attorney, he might in fact get better representation by proceeding *pro se.*

Finally, the petitioner's inability to communicate directly in English, which the trial judge well knew about (he conducted the entire colloquy with the petitioner through an interpreter), was yet another factor militating against the petitioner's capacity to conduct a *pro se* defense. In fact, this obvious disadvantage made even the District Attorney feel constrained to point out that under these circumstances a *pro se* defense might not be proper.[15]

We acknowledge the possibility that the trial judge's evaluation of petitioner's *pro se* application may have been influenced by petitioner's somewhat suspect legal maneuvering, as exemplified by the firing of his first counsel, only to ask for his return, and his not meeting with his second counsel, then claiming that his counsel was unprepared. Petitioner's conduct might have supported the trial judge's denial of a request for a continuance or for a change of counsel without violating petitioner's constitutional rights, *United States v. Rosenthal, supra,* 470 F.2d at 844; but in evaluating a *pro se* request, no matter what the prior history, the standard to be met remains whether the defendant has the capacity to make a knowing and intelligent election. While a history of sophisticated legal hi-jinks may be considered by the trial judge in deciding whether this standard has been met, *United States ex rel. Konigsberg v. Vincent, supra,* 526 F.2d at 134, the rec-

ord in this case clearly shows that the petitioner was acting out of frustration and an apparently unstable state of mind rather than from any sophisticated attempt to disrupt the judicial process. For all these reasons, we conclude that the trial judge's decision to allow the defendant to proceed *pro se* was erroneously made, and that the petitioner went to trial without the benefit of counsel in violation of his Sixth Amendment right.[16]

We, therefore, direct the granting of a writ of habeas corpus unless the state grants the defendant a re-trial within 60 days of the date of this opinion.

SO ORDERED.

---

**15.** MR. FRIED: Your Honor, with respect to the application by the defendant to proceed *pro se,* would it be proper to inquire of the defendant since he speaks no English whether possibly he should be made aware that inability to speak English may in fact hamper his ability to represent himself in his case, and possibly he should be made aware of that problem should he proceed as his own lawyer.

**16.** The State's contention that a denial of petitioner's request to proceed *pro se* would be reversible error in light of *Faretta* and *Plattner* is without merit. In *Faretta* the Supreme Court overturned the trial judge's decision because it was based on a finding that the defendant never had a constitutional right to proceed *pro se.* Similarly in *Plattner* the trial judge summarily dismissed the defendant's motion to proceed *pro se* without inquiring whether he was capable of making an intelligent choice. In fact, both these cases qualify the defendant's constitutional right by saying that the choice must be made intelligently.