COMMONWEALTH *vs.* DENNIS STOVALL.

Barnstable.   September 8, 1986. — October 3, 1986.

Present: GREANEY, C.J., BROWN, & FINE, JJ.

*Practice, Criminal,* Assistance of counsel, Conduct of prosecutor, Instructions to jury. *Waiver. Constitutional Law,* Waiver of constitutional rights, Assistance of counsel. *Larceny. False Pretenses. Evidence,* Hearsay.

Where, in a criminal case, a waiver of counsel form had been signed by the defendant, a hearing had been held during which the trial judge explored with the defendant his wish to represent himself, and standby counsel had been appointed to assist the defendant when requested, the record did not support the defendant's contention that his waiver of counsel was not voluntary because it was made under the duress of his prolonged pretrial incarceration. [738-739]

At the trial of an indictment charging larceny by false pretenses during which much hearsay evidence was introduced without objection, the defendant's conviction was warranted by competent evidence of the defendant's obtaining a substantial loan from the victim by falsely telling her that he needed the money because he had invested in a restaurant business in place of the victim, who had promised to make the investment, but had changed her mind and withdrawn from the transaction. [739-743]

In the circumstances, admission of much hearsay evidence during the trial of an indictment charging larceny by false pretenses did not create a substantial risk of a miscarriage of justice. [743]

At the trial of an indictment charging larceny by false pretenses in which the judge's instructions to the jury correctly stated the requirements for conviction of the crime, an arguably superfluous portion of the instructions, defining stealing and explaining the required intent, did not create a substantial risk of a miscarriage of justice. [744-745]

COMPLAINT received and sworn to in the Orleans Division of the District Court Department on February 12, 1985.

The case was tried in the jury session of the Barnstable Division before *Roger B. Champagne,* J.

*Floyd H. Anderson* for the defendant.

*Michael D. O'Keefe,* Assistant District Attorney, for the Commonwealth.

FINE, J. The defendant, who acted as his own attorney at his trial before a jury of six in a District Court, appeals his conviction of larceny by false pretenses. He claims that his waiver of counsel was involuntary, that the Commonwealth's case was based on substantial amounts of inadmissible hearsay evidence and was insufficient to justify the conviction, that the admission of hearsay evidence subjected him to unfair prejudice, and that the judge's instructions to the jury were erroneous. None of the issues sought to be raised on appeal was adequately preserved in the trial court. Accordingly, we review the defendant's contentions of error only with a view to determining whether any of them may have created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967); *Commonwealth* v. *Miranda, ante* 10, 16 (1986). We affirm the conviction. The facts are discussed, insofar as necessary, in connection with each issue to which they relate.

1. *Waiver of counsel.* The defendant was arrested on February 12, 1985, and held in lieu of bail pending trial. He was represented by privately retained counsel at his District Court bench trial on March 7, 1985. On July 19, 1985, pending a trial de novo before a jury, the defendant signed a waiver of counsel form. A hearing was held during which the trial judge in the jury session explored with the defendant his wish to act as his own lawyer. After the hearing, the defendant's attorney was allowed to withdraw, and the judge accepted the defendant's waiver of counsel. The trial commenced on September 11, 1985. Standby counsel, appointed with the defendant's consent, remained at his side and conferred with him from time to time during the trial.

Although the defendant concedes that the July 19, 1985, colloquy was minimally adequate, see *Commonwealth* v. *Lee,* 394 Mass. 209, 218 (1985), he claims now that his waiver of counsel was not voluntary because it was made under the duress of his prolonged pretrial incarceration. In two letters to

the trial judge, written between the July 19, 1985, colloquy and the date of his trial, the defendant, while reiterating his desire to proceed pro se, explained that the reason he wished to do so was to avoid further incarceration as a result of further delay of trial.

We accept for purposes of argument the defendant's contention that he was eager to represent himself because he had been in jail awaiting trial for several months and wished to expedite the trial. We do not think, however, that a choice made under those circumstances ordinarily amounts to duress for purposes of waiving counsel. But see *Cordoba* v. *Harris,* 473 F. Supp. 632, 636-640 (S.D. N.Y. 1979). The record establishes that the defendant, a college-educated person who conducted a vigorous defense, asserted the right to represent himself knowingly and intelligently in a timely and unequivocal manner. See *Commonwealth* v. *Hawkins,* 17 Mass. App. Ct. 1041 (1984). The defendant's decision, even if made for the reason given, constituted a free choice to exercise his constitutional right to conduct his own defense at trial. *Faretta* v. *California,* 422 U.S. 806, 818 (1975). *Commonwealth* v. *Chapman,* 8 Mass. App. Ct. 260, 265 (1979). Particularly in light of the availability of standby counsel, it would undoubtedly have been error for the judge *not* to allow the defendant to represent himself. The judge did not err in accepting the waiver, therefore, since "the right to represent oneself and the right to counsel are available only in the 'disjunctive.'" *Commonwealth* v. *Tuitt,* 393 Mass. 801, 807 (1985). This is true even though in retrospect it appears that the defendant may have acted to his disadvantage in conducting his own defense. "It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts." *Faretta* v. *California, supra* at 834. Nevertheless, the defendant must bear the consequences of his knowing, voluntary, and intelligent choice to waive counsel, which the judge at the time had to respect.

2. *Sufficiency of the competent evidence.* The defendant also contends that the Commonwealth did not introduce sufficient competent evidence to establish his guilt of larceny by false

pretenses. Much of the Commonwealth's evidence was produced in the form of hearsay which came in without objection. "Hearsay admitted without objection may be considered by the jury and may be given any probative value it possesses." Liacos, Massachusetts Evidence 266 (5th ed. 1981). See *Commonwealth* v. *Reynolds,* 338 Mass. 130, 136 (1958). Nevertheless, we might have some concern about affirming a conviction, whether or not the defendant appeared pro se, if the Commonwealth's evidence of the essential elements of the offense consisted entirely of inadmissible hearsay. See *Commonwealth* v. *Frisino,* 21 Mass. App. Ct. 551, 553 (1986). Therefore, even in the absence of a timely motion for a required finding of not guilty, we examine the evidence presented in light of the essential elements of the offense of larceny by false pretenses to determine whether the Commonwealth presented sufficient competent evidence to overcome such a motion.

The Commonwealth's case, in its essence, was as follows. Over a period of a month or so, Leslie McGrath and the defendant, using a different name, had become acquainted in Provincetown in the Cape Inn Restaurant, where she worked and he was a regular customer. McGrath had promised one Michael Campbell and other owners of the restaurant that she would invest $38,000 and become a partner in the restaurant business. The money was needed by the business for a pending purchase of real estate. Subsequently McGrath withdrew from the deal. McGrath testified that she then had a conversation with the defendant during which he told her that he had taken her place as an investor "to save [her] neck." According to McGrath, he told her that to obtain the money he had taken $38,000 from his computer company, New England Communications, Inc., which was located in Providence, Rhode Island, and in which his interest was worth $200,000. He told her that he needed $20,000, therefore, to cover his company payroll. He asked McGrath to lend him $20,000 for thirty days and promised to return it with $1,000 interest. Relying on the defendant's representations, McGrath lent the defendant $20,000. During the thirty-day period, McGrath discovered that the name the

defendant was using was not his real name, that he was planning to go to Hawaii with a young man he had just met, and that there was no business in Providence by the name of New England Communications, Inc. She demanded that the defendant return the money. By the thirtieth day following the loan, he had paid her only $1,000. A few days after the expiration of the thirty-day period, the defendant was arrested. The $20,000 has not been repaid.

Other evidence for the Commonwealth included testimony from Campbell that the defendant never paid $38,000 to invest in the restaurant business. Further, a police officer testified that, when he served an arrest warrant at the defendant's home, the gentleman who answered the door denied that the defendant was home. The officer found the defendant there, however, hiding in a shower. This same officer testified that the defendant at first denied that he knew the name Dennis Stovall.

Larceny by false pretenses, under G. L. c. 266, § 30, requires a showing that "the defendant made a false statement known or believed by him to be false with the intent that the person to whom it was made should rely upon its truth and that this person did rely upon it as true and as a result parted with personal property." *Commonwealth* v. *Edgerly,* 6 Mass. App. Ct. 241, 262 (1978), and cases cited; Nolan, Criminal Law § 347 (1976). Regardless of the abundance of inadmissible hearsay evidence in the record,[1] if there was competent evidence of a material false representation made by the defendant to McGrath for the purpose of inducing her to make the loan, and a transfer of money by her in reliance on the representation, the essential elements of the offense were satisfied.

The only alleged material misrepresentation the falsity of which was supported in the Commonwealth's case exclusively

---

[1]Examples of the hearsay evidence in the record include the following: McGrath testified that she tried to telephone the company in Providence and was told that no such company existed; she testified that a friend of the defendant's told her that the defendant had "purchased tickets for Hawaii and he was picking up this boy that he met three days ago and he was taking him to Hawaii"; and Campbell testified that he was told that the defendant had not paid one of the partners $38,000 as the defendant promised he would.

by hearsay was the existence of New England Communications, Inc. Campbell's nonhearsay testimony established that the defendant, contrary to what he had represented to McGrath, had not paid $38,000 to invest in the restaurant. Therefore, it was established by competent evidence that the defendant had not "saved" McGrath's "neck" and that he did not need the $20,000 to meet his payroll because of the investment. It is immaterial that McGrath may have relied in part on the defendant's other representations concerning the existence of the company and its value. The Commonwealth did not have to prove that the false representation was the sole motive that induced the victim to part with her money, only that it was a material factor in the inducement. See *Commonwealth* v. *Edgerly,* 6 Mass. App. Ct. at 263, and cases cited.

Two aspects of the evidence in the case deserve further mention. First, the conviction was based upon the defendant's having obtained a loan rather than a transfer of ownership of property. It is well established that a larceny by false pretenses may be based upon the obtaining of a loan. See *Commonwealth* v. *Greenberg,* 339 Mass. 557, 575 (1959); *Commonwealth* v. *Hamblen,* 352 Mass. 438 (1967). Second, the loan had become due only a few days before the defendant's arrest and, once the defendant was arrested and held on the charges, repayment, as a practical matter, was difficult. Thus, on the evidence, one could only speculate whether the defendant would have failed to repay the loan had he been given a reasonable time to do so. Neither the intent to repay a loan obtained by false pretenses nor actual payment, however, negates criminality. See *Commonwealth* v. *Coe,* 115 Mass. 481, 502-503 (1874). Therefore, the possibility that the loan might have been repaid in time does not avail the defendant.

The defendant suggests that in cases such as this the exclusive remedy should lie on the civil side of the court. See *Commonwealth* v. *Louis Constr. Co.,* 343 Mass. 600, 606 (1962); *Commonwealth* v. *True,* 16 Mass. App. Ct. 709, 713 (1983). This is not a case, however, in which deception was inferred from the mere nonperformance of a promise to repay a loan. The wrong being punished is not merely a private one reflecting

common practices in the business world. The Commonwealth's case, to the extent believed by the jury, involved the use of an outright lie to obtain, at least for a time, the use of the victim's savings.

3. *The extensive use of hearsay evidence.* The defendant makes a generalized claim that his trial was unfair because there were numerous instances in which hearsay evidence was admitted. Notwithstanding our conclusion as to the sufficiency of the competent evidence, the presence in the record of an extensive amount of inadmissible hearsay evidence, much of it prejudicial to the pro se defendant, caused us to look unusually closely at the hearsay evidence and how it was offered and used in order to determine whether its use created a substantial risk of a miscarriage of justice. We conclude that there was no such risk.

Virtually all of the hearsay evidence was either corroborated by other competent evidence or brought out by the defendant himself in his cross-examination of the witnesses or in his own testimony. Moreover, the prosecutor does not appear to have framed questions designed to elicit hearsay testimony from the witnesses. The problem arose primarily as a result of the long narrative statements given by witnesses in answer to proper questions and the failure of anyone to interrupt the statements or to request that the unresponsive testimony be struck. Although these occasional departures from the standard trial format may have been less than desirable, we are reluctant to say that responsibility for them fell squarely on the shoulders of any particular participant or that the informality led to unfairness. A prosecutor ought not, because the defendant is pro se, rely extensively on hearsay to make out his case. The prosecutor's conduct in this case, however, was not offensive. A judge has a general responsibility to conduct a fair trial, whether or not the defendant is pro se, but that does not require him to act as attorney for a pro se litigant. Standby counsel's only obligation is to be available as a resource "to aid the accused if and when the accused requests help." See *Faretta* v. *California,* 422 U.S. at 835 n.46. See also *McKaskle* v. *Wiggins,* 446 U.S. 168 (1984); ABA Standards for Criminal Justice § 6-3.7 (2d ed. 1982). The instant circumstances do not justify reversal.

4. *Jury instructions.* The judge in his jury instructions correctly stated the requirements for conviction of larceny by false pretenses. He told the jury twice that, in order to convict, they had to find that the defendant knowingly made a false representation of fact with the intent that the victim in reliance part with her property. He went on, however, to say the following: "Stealing is a wrongful taking of personal property from the possession of another with the intent to deprive that person of such property permanently. A necessary intent need not be proven directly, but may be inferred from all the facts. Intent may be found if one takes property without authority and so uses it as if to show indifference to whether the owner recovers possession or not."

The defendant contends that the quoted portion of the instruction misled the jury to believe that they could convict the defendant based only upon his conduct after the property changed hands. His contention is that, because of the instruction, he could have been convicted solely on the basis of his failure to repay the money. If the jury could reasonably have understood that to be what the instruction meant, we would agree with the defendant that it was erroneous. The language the judge used was sufficiently precise, however, to insure that the jury knew that they could not find the defendant guilty unless he had made a false statement to induce the victim to part with her money. Compare *Commonwealth* v. *Catania,* 377 Mass. 186, 190 (1979); *Commonwealth* v. *Kenneally,* 10 Mass. App. Ct. 162, 176-177 (1980). If anything, the added language made the jury instruction more favorable to the defendant than the instruction to which he was entitled. It suggested that the Commonwealth had to prove, in addition to the other elements of larceny by false pretenses, an intention permanently to deprive McGrath of her money, an intention which could be proved by the defendant's indifference as to whether he returned it or not. The Commonwealth did not have that burden. See *Commonwealth* v. *Coe,* 115 Mass. at 502-503. Even assuming that the challenged language was superfluous in an instruction on larceny by false pretenses and that it had some potential for confusing the jury, there was no timely

objection to it. In the context of the instructions as a whole, its use did not create a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Howell,* 386 Mass. 738, 740 (1982).

*Judgment affirmed.*