## COMMONWEALTH vs. MICHAEL McCAULIFF.

Worcester. January 3, 2012. - March 9, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, & GANTS, JJ.

*Larceny. False Pretenses.*

At the trial of a criminal complaint charging larceny of property over $250 by false pretenses arising from an unrepaid loan made by the complainant to the defendant for the purpose of cleaning and readying for sale a parcel of real property, the evidence was insufficient to sustain the defendant's conviction, in that the evidence did not furnish a sufficient basis to conclude beyond a reasonable doubt that the defendant knowingly made a false statement about an imminent sale of the property either at the time the complainant agreed to make the loan or at the time when he actually disbursed the loan funds. [638-643]

COMPLAINT received and sworn to in the Fitchburg Division of the District Court Department on July 24, 2006.

The case was heard by *Paul L. McGill*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Allison J. Koury* for the defendant.

*Donna-Marie Haran*, Assistant District Attorney, for the Commonwealth.

BOTSFORD, J. The defendant, Michael McCauliff, appeals from his conviction of larceny of property over $250 by false pretenses. His principal argument is that there was insufficient evidence presented to sustain his conviction. The case is before us on further appellate review; the Appeals Court, in an unpublished memorandum and order issued pursuant to its rule 1:28, affirmed the conviction. We agree with the defendant that the evidence was not sufficient, and therefore, we reverse.

*Background.* The larceny by false pretenses with which the defendant is charged relates to a loan of $70,000 that the complainant, Thomas Dooling, made to the defendant in a series

of disbursements between August, 2005, and March, 2006. Considered in the light most favorable to the Commonwealth, the trial evidence would permit a reasonable fact finder to find the following. Dooling, an attorney who was seventy-five years old and recently retired at the time of trial in January, 2008, had known the defendant for approximately twenty years. In late December of 2004, Dooling lent the defendant $25,000.[1] There was no note or other document memorializing the loan, but the parties' agreement appears to have been that the defendant would repay the loan with ten per cent interest. On January 30, 2005, the defendant gave Dooling a check for $27,500 to cover the loan and interest, but the check was returned for insufficient funds. In March, 2005, apparently after Dooling secured the assistance of a deputy sheriff to collect the money, the defendant gave Dooling another check for $27,500 that cleared.

On August 25, 2005, Dooling agreed to lend the defendant $70,000, for which Dooling was to receive $10,000 in interest. The defendant told Dooling that he needed the money to clean up property he owned at 80 Lunenberg Street in Fitchburg (property). The defendant also said that he "had the property sold for $200,000" and was going to repay Dooling as soon as the property was clean and the sale took place. From what the defendant told him, Dooling understood that the required cleanup involved "straightening out the stuff that was wrong with it . . . getting junk off the property or debris off the property." Dooling did not understand that environmental remediation of any kind was required. Again, based on the defendant's words, Dooling thought the sale of the property was imminent, but the defendant did not give him a time frame for how long it would take to get the property in the shape necessary for sale. Dooling and the defendant agreed, however, that the defendant would repay Dooling within two or three months after Dooling made the final instalment of the money to be lent.

As had been the case with the earlier loan in 2004, there was no note or written agreement memorializing this loan. Dooling

---

[1] The loan Thomas Dooling made to the defendant in December, 2004, is not the subject of the larceny complaint at issue in this appeal. The evidence concerning this earlier loan presumably was presented to explain the course of dealing between the defendant and Dooling.

disbursed $25,000 to the defendant on August 25, 2005, and another $25,000 on November 25, 2005. Dooling then disbursed an additional $15,000 on December 19, 2005, and, finally, $5,000 on March 16, 2006. The total of the four loan disbursements or instalments was $70,000. Dooling understood that all the money was for the same purpose: cleaning up and readying for sale the property. At the time of the last instalment, in March of 2006, the defendant again told Dooling that the sale of the property was imminent.

Dooling's son, Keith,[2] learned of the money his father had lent to the defendant either at the end of 2005 or after the last disbursement was made in March, 2006. Between March and May, 2006, Keith spoke to the defendant several times on the telephone about when the defendant was going to pay back Dooling; the defendant's response was that he would pay back the money in full when he sold the building. On May 19, 2006, no payment having been made, Dooling and Keith went to the defendant's place of business at 130 Lunenberg Street in Fitchburg to demand payment.[3]

The defendant met with father and son and told them that he was waiting to have the soil tested; that the building was sold for $200,000; and that as soon as the soil was tested, the sale would go through and the defendant would repay the money in full. The defendant gave Dooling a new check for $80,000, but asked him to hold it for a day or two. Some days later, the defendant left a telephone message for Dooling that everything was "set," the check was "cleared," and it could be deposited. Dooling deposited the check on May 25, 2006, but the check was returned because the defendant's account on which the check was drawn was closed and had been since January, 2006. Dooling tried thereafter to contact the defendant but could not find him: the defendant was not at his business in Fitchburg,

---

[2] Because Thomas and Keith Dooling share a common surname, we shall refer to Keith by his first name.

[3] A few days earlier, the defendant had given Dooling a check purporting to be in repayment of the total amount lent plus interest, i.e., $80,000, but the written number on the check was "eight" rather than "eighty." Dooling never tried to deposit that check but, instead, on May 19 went with Keith to the defendant's business to get a new check.

and no telephone calls were returned. As of the time of trial in 2008, the property had not been sold.

On July 24, 2006, on Dooling's application, a complaint issued from the Fitchburg Division of the District Court Department charging the defendant with larceny of property over $250 by false pretenses, G. L. c. 266, § 30. On January 23, 2008, after executing a jury waiver and following a waiver colloquy, the defendant was tried jury-waived before a judge in the District Court. At the close of the Commonwealth's case, the defendant moved for a required finding of not guilty, which the judge denied. The defendant renewed the motion at the close of the evidence, and it was again denied. Thereafter, the judge found the defendant guilty of the charge and sentenced him to one year in the house of correction. The defendant filed a timely notice of appeal, and as previously stated, the Appeals Court affirmed his conviction. We allowed the defendant's petition for further appellate review.

*Discussion.* The defendant advances two arguments: (1) the Commonwealth did not present sufficient evidence as part of its direct case to prove the defendant's guilt of larceny by false pretenses beyond a reasonable doubt; and (2) the judge failed to conduct a proper colloquy concerning the defendant's waiver of his right to a jury trial. Because we conclude that the evidence was insufficient to sustain the defendant's conviction, we do not reach the defendant's second argument.

In considering a claim of evidentiary insufficiency, we review the evidence in the light most favorable to the Commonwealth to determine whether any rational fact finder could have found that the Commonwealth proved the essential elements of the crime beyond a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979).

The crime of larceny by false pretenses[4] "requires proof that (1) a false statement of fact was made; (2) the defendant knew or believed that the statement was false when he made it; (3) the defendant intended that the person to whom he made the false

---

[4]Larceny by false pretenses is proscribed by G. L. c. 266, § 30, which provides in relevant part: "[w]hoever steals, or with intent to defraud obtains by a false pretence . . . the property of another . . . shall be guilty of larceny. . . ."

statement would rely on it; and (4) the person to whom the false statement was made did rely on it and, consequently, parted with property." *Commonwealth* v. *Mills*, 436 Mass. 387, 396-397 (2002). See *Commonwealth* v. *Leonard*, 352 Mass. 636, 644-645 (1967); *Commonwealth* v. *Lewis*, 48 Mass. App. Ct. 343, 350 (1999).[5]

The defendant does not contest the third and fourth of these elements, but centers his insufficiency claim solely on the first two. He argues that the Commonwealth did not provide any evidence that the statements made by the defendant to Dooling at the actual time of the loan transaction — August, 2005, to March, 2006 — were knowingly false. The Commonwealth counters that the evidence was more than adequate to prove the defendant made a false statement of fact that he knew to be false in connection with the "loan," and points in particular to the defendant's assurances, made in August, 2005, March, 2006, and again in May, 2006, that the sale was "imminent."

The Commonwealth's position cannot be sustained. A review of the evidence reveals extremely little to support an inference that the defendant's statement to Dooling that a sale of the property was imminent was false at the time Dooling agreed to lend money to the defendant (August, 2005), or even in March, 2006, when Dooling made the last instalment of loan funds. There was no evidence, for example, that within the relevant time frame — August, 2005, through March or even May, 2006 — the defendant had failed to take any of the steps that often accompany a plan to sell property, such as posting a "for sale" sign on the property or listing the property with a broker; and no evidence even hinting at the possibility that there was no buyer waiting in the wings.[6] Compare, e.g., *Commonwealth*

---

[5] "It is well established that a larceny by false pretenses may be based upon the obtaining of a loan." *Commonwealth* v. *Stovall*, 22 Mass. App. Ct. 737, 742 (1986). See *Commonwealth* v. *Hamblen*, 352 Mass. 438, 443-444 (1967). The defendant does not argue otherwise.

[6] We assess the sufficiency of the evidence at the close of the Commonwealth's case-in-chief. See *Commonwealth* v. *Kelley*, 370 Mass. 147, 149-150 & n.1 (1976). See also *Kater* v. *Commonwealth*, 421 Mass. 17, 20 (1995). While not relevant to the sufficiency of the Commonwealth's evidence, after the Commonwealth rested, the defendant testified that he had a purchase and sale agreement covering the property with two individuals he identified by name, but that the sale did not go through after the property failed environmental tests.

v. *Lewis*, 48 Mass. App. Ct. at 350-351 (evidence in Commonwealth's case sufficient to prove defendant's statement to victim that "property managers were pressuring him" was false and known by him to be false, where evidence [1] showed property manager had never heard of defendant, or of any project to start business described by defendant; and [2] reflected absence of any record of discussion with property manager about renting space to defendant in any circumstance); *Commonwealth* v. *Stovall*, 22 Mass. App. Ct. 737, 742-743 (1986) (Commonwealth's evidence sufficient to prove defendant's statement to victim that he had taken her place as investor "to save [her] neck," and therefore needed loan from her to cover his company payroll, was false and he knew it to be false, where Commonwealth showed defendant did not own company for which he claimed to need to cover payroll). Nor was there any evidence that the defendant did not perform or cause to be performed any cleanup work on the property[7] — even though, as Dooling stated, the defendant told him he needed to clean up the property in order to effectuate the sale.[8]

The Commonwealth does not address these points but relies on the following evidence to prove the falsity of the defendant's

[7]The only evidence related to this issue presented during the Commonwealth's case did not advance the Commonwealth's cause: Dooling testified on cross-examination that during the time frame in which he was making the loan in question, he drove by the property but never examined it to determine whether work was being performed.

[8]As the Commonwealth emphasizes, circumstantial evidence and reasonable inferences drawn from it may provide the necessary quantum of proof to defeat a motion for a required finding of not guilty. See *Commonwealth* v. *Grandison*, 433 Mass. 135, 141 (2001), quoting *Commonwealth* v. *Lodge*, 431 Mass. 461, 465 (2000). However, it is necessary in the first instance to introduce evidence that provides the basis for any such inferences. We assume that evidence showing the defendant did no cleanup work on the property between August, 2005, and March or even May, 2006, might permit an inference that, contrary to his statement(s), the defendant had never had a buyer ready to complete the purchase of the property once it was cleaned up, and never had a plan or intent to sell the property "imminently." But without any evidence concerning work done or not done by the defendant, such an inference cannot be drawn here. See *Commonwealth* v. *True*, 16 Mass. App. Ct. 709, 713 (1983) (reversing conviction of larceny by false pretenses of defendant builder for lack of sufficient evidence that at time builder agreed to build victim's house, he anticipated he would not perform; court noted, among other evidentiary weaknesses, absence of showing that builder failed to attempt to do any work on promised house).

statements about the imminent sale of the property: (1) the defendant's statement that he had a buyer for the property who was going to pay $200,000 for it as soon as it was cleaned up; (2) the defendant's repeated assurances that the sale of the property was "imminent"[9]; (3) the defendant's failure to inform Dooling that an environmental soil test needed to be performed until confronted by Dooling and his son in May of 2006; (4) also in May, the defendant's act of writing the first check purporting to repay the loan incorrectly so that it could not be deposited; (5) the defendant's act of writing the second, replacement check on an account he knew was closed; (6) the defendant's telephone message for Dooling in which he falsely stated that "[t]he sale is going through" and the check could be deposited; (7) the defendant's subsequent disappearance; and (8) the fact that the property was never sold.

The Commonwealth's reliance is misplaced: this evidence, considered individually or together, does not furnish a sufficient basis for concluding beyond a reasonable doubt that the defendant knowingly made a false statement about the imminent sale of the property either at the time Dooling agreed to make the loan or at the time he actually disbursed the loan funds. With respect to the defendant's representations about a buyer purchasing the property for $200,000 as soon as it was cleaned up (the first item above) and his assurances about an imminent sale (the second item above), for reasons discussed, there was little or no evidence from which to infer that the statements were false when made; the Commonwealth's repeated assertions that they were false does not make them so.

As for the evidence described in the third through seventh items above, its fatal weakness is that it concerns acts by the defendant in May of 2006 or thereafter — nine months after Dooling agreed to lend $70,000 to the defendant and made the first instalment of the loan proceeds, and at least two months after Dooling made the last. To establish larceny by false pretenses, it was necessary for the Commonwealth to produce evidence tending to show that the defendant made a false state-

---

[9]It is not clear how the evidence that the defendant assured Dooling the property's sale was imminent helps to prove that the substance of the assurance itself was false.

ment he knew to be false at the time Dooling agreed to loan the money (August, 2005), and, arguably, at the time Dooling actually parted with the funds (August, November, and December of 2005, and in mid-March, 2006). This is so because what must be shown is that the false statement caused Dooling to make the loan, or at least was material to his decision to do so. See, e.g., *Commonwealth* v. *Mills*, 436 Mass. at 396-397; *Commonwealth* v. *Lewis*, 48 Mass. App. Ct. at 351.

The defendant's seemingly deceptive statements and evasive actions in May of 2006 arguably offer some support for an inference that he did not have an imminent sale of the property lined up when he gave that assurance to Dooling in August of 2005 and in March of 2006. But without more, we cannot say that a contrary inference is not just as likely, namely, that when the defendant approached Dooling in August, 2005, to arrange the loan, the defendant thought that he had a buyer prepared to purchase the property as soon as it was cleaned up, but the sale later fell through and the defendant reacted by engaging in evasion and a series of misrepresentations because he knew he could not repay Dooling. Conflicting inferences of equal likelihood do not provide proof beyond a reasonable doubt. See *Commonwealth* v. *Louis Constr. Co.*, 343 Mass. 600, 606 (1962).[10]

Finally, the evidence that the property had not been sold even at the time of trial adds little to the quantum of proof. Contrary to the Commonwealth's assumption, the lack of sale, by itself, does not give rise to a permissible inference that no sale of the property was ever intended. See *Commonwealth* v. *True*, 16 Mass. App. Ct. 709, 711 (1983) ("While deception as to a person's present intention to perform a promise may be the basis of a conviction of larceny by false pretenses . . . such

---

[10]In *Commonwealth* v. *Louis Constr. Co.*, 343 Mass. 600, 606 (1962), this court reversed the defendants' convictions on indictments charging larceny by false pretenses, stating: "It seems to us that viewing the evidence as a whole the jury could not have found an intent to defraud beyond a reasonable doubt. When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof. . . . [I]f, upon all the evidence, the question of the guilt of the defendant is left to conjecture or surmise . . . a verdict of guilty cannot stand" (citations and quotations omitted).

deception cannot be inferred from the mere nonperformance of the promise" [citations omitted]).[11]

*Conclusion.* The judgment of conviction is reversed, and the case is remanded for entry of a required finding of not guilty.

*So ordered.*

---

[11]A review of cases involving charges of larceny by false pretenses stemming from a defendant's participation in an alleged loan transaction indicates that to sustain a conviction, the Commonwealth's evidence must be qualitatively stronger and quantitatively greater than in this case. See, e.g., *Commonwealth* v. *Hamblen*, 352 Mass. at 440-444; *Commonwealth* v. *Lewis*, 48 Mass. App. Ct. at 350-351; *Commonwealth* v. *Stovall*, 22 Mass. App. Ct. at 739-743. We have found no case of larceny by false pretenses decided by this court or the Appeals Court in which the verdict of guilt was upheld where the evidence was even close to as slim as it was in this case.